DAVID M. POITRAS – Bar No. 141309
SUSAN K. SEFLIN - Bar No. 213865
JESSICA S. WELLINGTON - Bar No. 324477
BG LAW LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone:  (818) 827-9000
Facsimile:   (818) 827-9099
Email: dpoitras@bg.law
 sseflin@bg.law
 jwellington@bg.law

Proposed Attorneys for Chapter 11 Debtor and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>Mash Studios, Inc., | Case No. 8:24-bk-11048-TA<br><br>Chapter 11<br><br>**DEBTOR'S NOTICE OF EMERGENCY MOTION AND EMERGENCY MOTION FOR ORDER (I) AUTHORIZING THE CONTINUED USE OF THE DEBTOR'S CASH MANAGEMENT SYSTEM, (II) AUTHORIZING THE MAINTENANCE OF THE DEBTOR'S PRE-PETITION BANK ACCOUNTS, AND (III) REQUIRING BANKS TO RELEASE ADMINISTRATIVE HOLDS AND/OR FREEZES ON THE DEBTOR'S PRE-PETITION BANK ACCOUNTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>*Declaration of Lisa Boardman Filed Concurrently Herewith*<br><br>**Hearing:**<br>Date:     April 26, 2024<br>Time:     11:30 a.m.<br>Place:    Courtroom 5B - Via Zoom.gov only<br>             411 West Fourth Street<br>             Santa Ana, CA 92701 |

1

2980728

# **TABLE OF CONTENTS**

Page

I. FACTUAL BACKGROUND ..........................................................................................3

    A. General Case Background ..................................................................................3

    B. Description of the Debtors' Businesses .............................................................3

    C. Circumstances Impacting the Debtors' Operations and Reason for the Bankruptcy Filing ...............................................................................................4

II. RELIEF REQUESTED ....................................................................................................5

III. BASIS FOR RELIEF REQUESTED ...............................................................................8

    A. The Court Should Authorize the Debtor to Maintain Pre-BK Account, Subject to the Terms Set Forth Herein ................................................................8

    B. The Court Should Order Chase to Immediately Release Any and All Administrative Holds And/Or Freezes that it May Have on the Debtor's Pre-BK Account ..........................................................................................................10

IV. NOTICE AND REQUEST FOR WAIVER OF THE STAY ..........................................11

V. CONCLUSION ................................................................................................................12

2980728

# TABLE OF AUTHORITIES

Page

## CASES

*Citizens Bank of Maryland v. Strumpf*,
    516 U.S. 16, 18-20 (1995) ................................................................................................10

*In re Amdura Corp.*,
    75 F.3d 1447 (10th Cir. 1996) .........................................................................................10

*In re Anna's Linens, Inc.*,
    Case No. 8:15-bk-13008-TA, Docket Nos. 9 and 66, (Bankr. C.D. Cal. June 14, 2015) ....9

*In re Baldwin-United Corp.*,
    79 B.R. 321 (Bankr. S.D. Ohio 1987) ..............................................................................10

*In re Charter Company, et al.*,
    778 F.2d 617 (11th Cir. 1985) ...........................................................................................9

*In re Eagle Food Centers, Inc.*,
    Case No. 00-01311 (RRN) (D. Del. March 2, 2000) .........................................................9

*In re Evergreen Oil, Inc.*,
    Case No. 8:13-bk-13163-SC, Docket No. 31, (Bankr. C.D. Cal. April 10, 2013) .............9

*In re Executive Associates, Inc.*,
    24 B.R. 171, 172 (Bankr. S.D. Tex. 1982) ......................................................................10

*In re Grant Broadcasting of Philadelphia, Inc.*,
    75 B.R. 819 (E.D. Penn. 1987) ..........................................................................................9

*In re Krystal Koach Inc.*,
    Case No. 8:10-bk-26547-CB, Docket No. 40, (Bankr. C.D. Cal. December 6, 2010) .......9

*In re LHG Resources, Inc.*,
    34 B.R. 202, 203 (Bankr. W.D. Tex. 1983) ....................................................................10

*In re Nasty Gal Inc.*,
    Case No. 2:16-bk-24862-BB, Docket Nos. 11 and 64, (Bankr. C.D. Cal. November
    10, 2016) ............................................................................................................................9

*In re New York City Shoes, Inc.*,
    78 B.R. 426, 427 (Bankr. E.D. Pa. 1987) ..........................................................................9

*In re North American Health Care, Inc.*
    Case No. 8:15-bk-10610-MW, Docket No. 50, (Bankr. C.D. Cal. February 19, 2015) ......9

*In re Pathmark Stores. Inc. et al.*,
    Case No. 00-02963(JJF) (D. Del. July 13, 2000) ..............................................................9

*In re Philip Services (Delaware), Inc.*,
    Case No. 99-02385(MEW) (Bankr. D. Del. June 30, 1999) .............................................9

*In re Plaza Healthcare Center, LLC,*
 Case No. 8:14-bk-11335-CB, Docket No. 57, (Bankr. C.D. Cal. March 13, 2014)............9

*In re Safety-Kleen Corp.*,
 Case No. 00-02303(PJW) (Bankr. D. Del. June 13, 2000)...................................................9

*In re Shilo Inn, Diamond Bar, LLC,*
 Case No. 2:10-bk-60884-VZ, Docket No. 38, (Bankr. C.D. Cal. January 14, 2011)..........9

*In re Shoe Pavilion, Inc.*,
 Case No. 1:08-bk-14939-MT, Docket No. 39, (Bankr. C.D. Cal. July 22, 2008) ...............9

**STATUTES**

11 U.S.C. § 105(a) ..................................................................................................................9, 10

11 U.S.C. § 1102 ..........................................................................................................................12

11 U.S.C. § 1107(a) ........................................................................................................................3

11 U.S.C. § 1108............................................................................................................................3

11 U.S.C. § 363(c)(1)....................................................................................................................10

**RULES**

Federal Rule of Bankruptcy Procedure 6003................................................................................11

Federal Rule of Bankruptcy Procedure 6003(b) ..........................................................................11

Federal Rule of Bankruptcy Procedure 6004(h) ....................................................................11, 12

**TO THE HONORABLE THEODOR C. ALBERT, CHIEF UNITED STATES BANKRUPTCY JUDGE, SECURED LENDERS, CREDITORS HOLDING THE TWENTY LARGEST UNSECURED CLAIMS, AND THE OFFICE OF THE UNITED STATES TRUSTEE:**

**PLEASE TAKE NOTICE** that a hearing will be held on April 26, 2024 at 11:30 a.m. via Zoom.gov only before the Honorable Theodor C. Albert, Chief United States Bankruptcy Judge for the Central District of California, for the Court to consider the motion (the "Motion") filed by Mash Studios, Inc., the chapter 11 debtor and debtor in possession herein (the "Debtor" or "Studios"), for entry of an order, pursuant to Sections 105(a), 363, 364(a), 503(b), 1107(a) and 1108 of Title 11 of the United States Code (the "Bankruptcy Code"), Rules 4001 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules," and each one a "Bankruptcy Rule") and Rules 2081-1(a)(9) and 4001-2 of the Local Bankruptcy Rules of the Central District of California (the "Local Rules"): (1) authorizing the continued use of the Debtor's cash management system; (2) authorizing the maintenance of the Debtor's existing, pre-petition bank account at JPMorgan Chase Bank, NA ("Chase"); and (3) requiring Chase to release any administrative holds and/or freezes on the Debtor's pre-petition bank account.

It is imperative that the Debtor's proposed cash management system be approved to provide a smooth transition into chapter 11 without disrupting the Debtor's ongoing business operations. Among other things, the Debtor needs to ensure that its employee paychecks can be issued and cashed, that customers may pay outstanding invoices, and that business continues as usual. Altering the Debtor's cash management system at this early stage of the case will devastate the Debtor's ongoing business operations.

**PLEASE TAKE FURTHER NOTICE** that if you wish to object to the relief sought by the Motion, you must appear at the hearing and file any responsive pleading in accordance with the deadline set forth in the accompanying Notice of Emergency Motions. Your failure to timely object may be deemed by the Court to constitute consent to the relief requested herein.

**PLEASE TAKE FURTHER NOTICE** that the Motion is based on this Motion and attached Memorandum of Points and Authorities, the concurrently filed Declaration of Lisa L.

Boardman and evidence appended thereto, the arguments of counsel and other admissible evidence properly brought before the Court at or before the hearing on this Motion.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order granting the relief requested herein, and:

1. Authorizing the maintenance of the Debtor's pre-petition bank account;
2. Waiving the fourteen-day stay applicable to any order approving the use of estate property imposed by Bankruptcy Rule 6004(h);
3. Waiving the 21-day time period imposed by Bankruptcy Rule 6003 to avoid immediate and irreparable harm; and
4. Granting such other relief as the Bankruptcy Court deems appropriate under the circumstances.

DATED: April 25, 2024                    BG Law LLP


By: /s/ Jessica S. Wellington
    David M. Poitras
    Susan K. Seflin
    Jessica S. Wellington
Proposed Attorneys for Chapter 11 Debtor
and Debtor in Possession

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    FACTUAL BACKGROUND**

    **A.    General Case Background**

    1.    On April 24, 2024, the Debtor, a California corporation, filed a voluntary petition for relief under subchapter v of chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business and manage its affairs as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or committee has been appointed in the Debtor's chapter 11 case.

    2.    Concurrently with the filing of the Debtor's bankruptcy petition, the Debtor's affiliate MASHindustries, Inc. ("Industries," and together with the Debtor, the "Debtors") filed its own chapter subchapter v chapter 11 bankruptcy proceeding, styled *In re Mash Studios, Inc.*, Bankr. Case No. 8:24-bk-11046-TA. The Debtors have filed a motion for joint administration of their bankruptcy cases.

    **B.    Description of the Debtors' Businesses**

    3.    Studios, a California corporation, was formed in 2002 by Bernard Brucha and Mr. Brucha is the sole shareholder of Studios. Studios designs custom office furniture for large corporations such as Nike, Chanel and Google. In 2013, one of Studios suppliers went out of business and Mr. Brucha formed Industries to acquire those assets to begin a furniture and millwork manufacturing business. Mr. Brucha is the sole shareholder of Industries.

    4.    Industries' manufacturing operations are located in 7150 Village Drive, Buena Park, California (the "Buena Park Property"). Industries employs approximately 34 people and Studios has 7 employees. Industries' website is www.mashindustries.com and Studios' website is www.mashstudios.com.

    5.    For the fiscal year 2023, Industries' gross revenue was $5,001,733 and Studios' gross revenue was $9,066,031. Prior to Covid in 2020, the Debtors' combined businesses were historically profitable. Along with the commercial office market in general, the Debtors' businesses were hit extremely hard by the Covid pandemic, with new orders greatly reduced for 2020 through 2023. The Debtors' businesses have begun turning the corner in 2024 and the Debtors reduced their

2980728

overhead greatly by laying off approximately 30 employees, and closing Studios' headquarters and showrooms. Industries has approximately $12 million in new orders on the books, and Studios has approximately $6 million in new orders on the book. The Debtors are projecting a return to profitability in April or May 2024.

      **C.**      **Circumstances Impacting the Debtors' Operations and Reason for the Bankruptcy Filing**

      6.      Although Industries occupies the Buena Park Property, Studios is the tenant on the lease. In 2023, Industries began having problems timely paying the rent of $86,000 a month on the Buena Park Property and as of the petition date, the Debtors are seven months behind on rent though they have paid March and April 2024 rent.[1]

      7.      On January 10, 2024, Buchanan Street Partners (BSP"), the landlord for the Buena Park Property, served Studios with a three day notice to pay rent or quit. While the Debtors responded to the three-date notice with a payment plan proposal, the Debtors were not able to make the full payment. Thereafter, on February 16, 2024, BSP filed an unlawful detainer action and obtained a writ of possession for the Buena Park Property. On Friday, April 19, 2024, Studios was served with a *Notice to Vacate* the Buena Park Property on or before April 25, 2024 at 6:01 a.m. Industries manufacturing facility (the "Facility") located at the Buena Park Property is an 77,000 sq. ft. manufacturing facility, houses valuable equipment, and is vital to the Debtor's ongoing operations and return to profitability. Industries' thirty-four Employees work out of the Facility and being locked out of the Facility by the Sheriff will decimate Industries' business and operations. Industries intends to relocate its manufacturing operations to a smaller facility, within 120 days of the Petition Date, and proposes to pay BSP postpetition rent at the contract rate from the petition date through the date that it vacates the premises.

      8.      Combined, the Debtors have outstanding debt of approximately $7 million [$2.5 million in secured debt (SBA loans during Covid) and approximately $4.5 million in unsecured trade

---

[1] The landlord holds a security deposit in the amount of $268,275.53, which it apparently has not applied to the outstanding balance.

4

debt (including the BSP debt)]. The Debtors intend to file a chapter 11 reorganizing plan to resolve these debts in their chapter 11 cases.

**II.    RELIEF REQUESTED**

9.     By this Motion, the Debtor seeks authorization to maintain its existing pre-petition account at Chase, Acct No. XXXXX3675 (the "Pre-BK Account") for all purposes in this case to avoid immediate and irreparable harm and to continue to collect incoming payments to avoid disruption in the Debtor's collections during the chapter 11 case.

10.    As part of the cash management system, the Debtor proposes to maintain the Pre-BK Account, which is the account utilized for Debtor's deposits and disbursements. The Debtor requests authority to continue to use the Pre-BK Account as it did pre-petition to ensure that (a) payroll can timely be funded, and (b) to ensure a smooth transition to the extent that this account is currently set up for automatic payments, etc.

11.    All the Debtor's customers pay the Debtor via ACH payments deposited into the Pre-BK Account. Establishing new accounts would entail significant delay and cost and would require the Debtor to inform each of its customers of the new account. At a minimum, substantial disruptions to the Debtor's business would occur by, among other things, delaying the receipt of incoming payments and funding payroll. This would in turn harm creditors, employees, and consumer confidence, and would hinder the Debtor's chance to complete a successful reorganization. Accordingly, the maintenance of the Pre-BK Account is essential for the Debtor's continued operations.

12.    To obviate the disruption that might otherwise occur in the collection process, it is in the best interest of the estate that the Debtor be authorized to continue its ordinary course use of the Pre-BK Account, rather than to close the account and then open a new account.

13.    It is imperative that the Debtor's cash management system be approved to provide a smooth transition into chapter 11 without disrupting the Debtor's ongoing business operations. During this transition period, the Debtor needs to ensure that its employee paychecks can be issued and cashed in a timely manner, that customers may purchase the Debtor's goods and services and pay outstanding invoices, and that business continues as usual. Additionally, the continued use of

the Pre-BK Account enables the Debtor to maintain control over the receipt of cash, and to generate timely and accurate financial information critical to operations during the pendency of the chapter 11 case. If these practices and procedures are disrupted, the Debtor's efforts to reorganize may be jeopardized.

14. Further, maintaining the existing Pre-BK Account would not prejudice any party. The Debtor will maintain strict records with respect to all transfers of cash so that it is able to readily account for all transactions. The Debtor's maintenance of its existing Pre-BK Account is not only of critical importance to the Debtor's business operations, but is also in the best interest of the Debtor, its estate, and creditors.

15. If the Pre-BK Account is disrupted, the Debtor will experience immediate and irreparable harm.

16. As a result, the Debtor requests this Court authorize procedures as follows:

   a. That the Debtor is authorized and empowered to: 1) maintain its Pre-BK Account and continue to use its Pre-BK Account in existence as of the Petition Date and as listed and described; 2) treat the Pre-BK Account for all purposes as debtor-in-possession account (and the Debtor will request Chase convert the account into a debtor-in-possession account with the increased collateralization); 3) use, in their present form, existing checks and other documents related to the Pre-BK Account; 4) pay post-petition ordinary course bank fees in connection with the Pre-BK Account; 5) perform its obligations under the documents and agreements governing the Pre-BK Account;

   b. That the Debtor maintains records of all transfers and transactions within Pre-BK Account so that all transfers and transactions are adequately and promptly documented in, and ascertainable and traceable from, the Debtor's books and records;

   c. That Chase is authorized and directed to: 1) continue to administer, service, and maintain the Pre-BK Account as such Accounts are administered, serviced, and maintained prior to the Petition Date, without interruption and in the usual and

2980728

ordinary course; and 2) to pay any and all checks, drafts, wires, automated clearinghouse transfers, electronic fund transfers, or other items presented, issued, or drawn on the Pre-BK Account (collectively, the "Debits") on account of a claim arising on or after the Petition Date so long as there are sufficient collected funds in the relevant Pre-BK Account and in accordance with the agreements governing said Pre-BK Account, including, without limitation, any prepetition cash management agreements, merchant service agreements, or treasury services agreements;

d.  That no Debits issued on the Pre-BK Account prior to, but presented after, the commencement of the Debtor's chapter 11 case are honored or paid except as otherwise permitted by an order of the Court (and the Debtor is seeking such relief in its first day wage motion);

e.  Chase is authorized and directed to rely on the representations of the Debtor as to which Debits are authorized to be honored and dishonored, whether or not such Debits are dated prior to, on, or subsequent to the Petition Date, and whether or not Chase believes the payment is authorized by an order of the Court. To the extent that the Debtor directs that any Debit be dishonored, the Debtor may issue replacement Debits consistent with the orders of this Court;

f.  That Chase is authorized to debit the Pre-BK Account in the ordinary course of business for all Debits presented for payment or exchanged for cashier's checks prior to the commencement of the Debtor's chapter 11 case;

g.  That nothing contained in this Motion or its subsequent order may prevent the Debtor from closing the Pre-BK Account as it deems necessary and appropriate;

h.  That the Debtor reimburse Chase for any claim arising prior to or after the Petition Date in connection with Debits deposited with Chase which has been dishonored or returned for insufficient funds;

i.  That Chase implement reasonable handling procedures to effectuate the terms requested in this Motion. The Debtor requests that if Chase does not implement

such handling procedures, that Chase be liable to the Debtor or its estate, or otherwise held in violation of this Motion or its subsequent order, for honoring a prepetition Debit or other Debit: 1) at the direction of the Debtor that such prepetition Debit or other Debit be honored; 2) in the good faith belief that the Court has authorized that such prepetition Debit or other Debit be honored; or 3) as a result of an innocent mistake made despite implementation of such handling procedures;

j. That to the extent any other order is entered directing Chase to honor Debits made, drawn, or issued in payment of prepetition claims, the obligation to honor such items are subject to the order authorizing this Motion;

k. That the Debtor and Chase are authorized and directed to continue to perform pursuant to the terms of any prepetition documents and agreements governing the Pre-BK Account, except and to the extent otherwise directed by the terms of this order. The Debtor requests that Chase is authorized to continue offsetting any funds deposited in the Pre-BK Account by Debtor to the extent necessary to cover any fees, charges, and assessments, including attorneys' fees, set forth or provided for in the agreements governing the Pre-BK Account, or as otherwise permitted in the ordinary course of business pursuant to the agreements governing the Pre-BK. The parties to such agreements seek to continue to enjoy the rights and remedies afforded them under such agreements, except to the extent modified by the Court or by operation of the Bankruptcy Code.

## III. BASIS FOR RELIEF REQUESTED

### A. The Court Should Authorize the Debtor to Maintain Pre-BK Account, Subject to the Terms Set Forth Herein

The Office of the United States Trustee ("OUST") has established certain operating guidelines for debtors in possession to supervise the administration of chapter 11 cases. These guidelines require chapter 11 debtors to, among other things: (a) close all existing bank accounts; (b) open a minimum of three (3) new debtor in possession accounts under the debtor name as a debtor in

possession (general, payroll and tax) at an approved depository, with all disbursements made out of one of the debtor in possession accounts; and (c) obtain checks from each debtor in possession account that bear the designation "Debtor in Possession" and the bankruptcy case number. However, Section 105(a) of the Bankruptcy Code allows the Court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

Courts have acknowledged that a bankruptcy court has the discretionary authority to allow the continued use of existing, pre-petition bank accounts. 11 U.S.C. § 105(a); *In re Pathmark Stores. Inc. et al.*, Case No. 00-02963(JJF) (D. Del. July 13, 2000); *In re Safety-Kleen Corp.*, Case No. 00-02303(PJW) (Bankr. D. Del. June 13, 2000); *In re Eagle Food Centers, Inc.*, Case No. 00-01311 (RRN) (D. Del. March 2, 2000); *In re Philip Services (Delaware), Inc.*, Case No. 99-02385(MEW) (Bankr. D. Del. June 30, 1999); *see also*, *In re New York City Shoes, Inc.*, 78 B.R. 426, 427 (Bankr. E.D. Pa. 1987) (debtor depositing postpetition funds into prepetition bank accounts); *In re Grant Broadcasting of Philadelphia, Inc.*, 75 B.R. 819 (E.D. Penn. 1987); *In re Charter Company, et al.*, 778 F.2d 617 (11th Cir. 1985).

Indeed, courts in this district have recognized that the strict enforcement of the requirement that a debtor in possession close its bank accounts does not serve the rehabilitative process of chapter 11. Accordingly, courts in this district have waived such requirements and replaced them with alternative procedures. *See, e.g.*, *In re Anna's Linens, Inc.*, Case No. 8:15-bk-13008-TA, Docket Nos. 9 and 66, (Bankr. C.D. Cal. June 14, 2015); *In re Nasty Gal Inc.,* Case No. 2:16-bk-24862-BB, Docket Nos. 11 and 64, (Bankr. C.D. Cal. November 10, 2016); *In re Evergreen Oil, Inc.,* Case No. 8:13-bk-13163-SC, Docket No. 31, (Bankr. C.D. Cal. April 10, 2013); *In re Shilo Inn, Diamond Bar, LLC,* Case No. 2:10-bk-60884-VZ, Docket No. 38, (Bankr. C.D. Cal. January 14, 2011); *In re Shoe Pavilion, Inc.*, Case No. 1:08-bk-14939-MT, Docket No. 39, (Bankr. C.D. Cal. July 22, 2008); *In re Plaza Healthcare Center, LLC,* Case No. 8:14-bk-11335-CB, Docket No. 57, (Bankr. C.D. Cal. March 13, 2014); *In re Krystal Koach Inc.*, Case No. 8:10-bk-26547-CB, Docket No. 40, (Bankr. C.D. Cal. December 6, 2010); *In re North American Health Care, Inc.* Case No. 8:15-bk-10610-MW, Docket No. 50, (Bankr. C.D. Cal. February 19, 2015).

2980728

The continuation of the Pre-BK Account is also permitted pursuant to Section 363(c)(1) of the Bankruptcy Code, which authorizes the debtor-in-possession to "use property of the estate in the ordinary court of business without notice or a hearing." Included within the scope of Section 363(c)(1) is the ability to continue "routine transactions" required under the cash management system. *See In re Amdura Corp.*, 75 F.3d 1447, 1453 (10th Cir. 1996). Bankruptcy courts have routinely granted chapter 11 debtors authority to continue utilizing existing cash management systems and treat request for such authority as a relatively "simple matter." *See In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987). Further, the Court has authority to grant the relief requested under Section 105(a) of the Bankruptcy Code.

As such, sufficient factual and legal basis therefore exists for this Court to approve this Motion and allow the Debtor to maintain the Pre-BK Account as detailed above in order to ensure revenues are received as soon as possible, to avoid delays in payments to administrative creditors, including employees and trade creditors, to ensure as smooth a transition into Chapter 11 as possible with minimal disruption, and to aid in the Debtor's efforts to successfully and rapidly complete this case.

**B.    The Court Should Order Chase to Immediately Release Any and All Administrative Holds And/Or Freezes that it May Have on the Debtor's Pre-BK Account**

Courts have found the placement of an administrative "freeze" or hold on the bank account of a chapter 11 debtor results in, at a minimum, "unauthorized interference with the property of the Chapter 11 debtor without leave of the Court." *In re Executive Associates, Inc.*, 24 B.R. 171, 172 (Bankr. S.D. Tex. 1982); *see In re LHG Resources, Inc.*, 34 B.R. 202, 203 (Bankr. W.D. Tex. 1983). Other than what may be needed for a very short period of time to protect any reasonable, potential setoff rights, any administrative holds or freezes must be lifted immediately and in no event should any administrative holds or freezes apply to the entire balance of a debtor's bank account, but only to that portion of the account required to protect a potential setoff right. *See Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18-20 (1995); *In re Mwangi*, 432 B.R. 812, 819-20 (B.A.P. 9th Cir. 2010), *disapproved of on other grounds in later appeal*, 473 B.R. 802 (D. Nev. 2012), *aff'd*, 764 F.3d 1168

10

(9th Cir. 2014).

Here, as discussed, the Debtor requires continuing access to the Pre-BK Account. If Chase were to maintain administrative holds and/or freezes on the Debtor's Pre-BK Account such that the Debtor's access to the Pre-BK Account for the foregoing purposes was hindered in any material way, that would likely result in damage to the Debtor and its reorganization efforts.

### IV.   NOTICE AND REQUEST FOR WAIVER OF THE STAY

Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." In view of the urgency of the relief requested herein and the risk to the Debtor's operations if the Pre-BK Account is interrupted, a fourteen-day stay of the relief sought herein is impractical. To be sure, absent an order approving the continued use of the Pre-BK Account, the Debtor may be faced with a delay in receipt in payments. Accordingly, the Debtor requests that this Court waive the stay under Bankruptcy Rule 6004(h) and provide in the order granting the relief sought herein that such order shall be effective immediately.

Bankruptcy Rule 6003(b) provides "except to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding . . . a motion to use, lease or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before filing of the petition. . . ." As described herein, if the Pre-BK Account is not maintained, the Debtor will experience immediate and irreparable harm. To ensure the Debtor's chances of successfully reorganizing and maximizing value for the Debtor's creditors, this Court should find that the exception set forth in Bankruptcy Rule 6003 applies here.[2]

The Debtor shall serve notice of this Motion on the following: (i) the Office of the United States Trustee; (ii) all secured creditors; (iii) the holders of the twenty (20) largest unsecured claims against the Debtor, or any official committee of unsecured creditors, if one is appointed pursuant to

---

[2] To the extent any of the relief requested herein is not granted on the Petition Date, in the alternative, and out of an abundance of caution, the Debtor requests that the Court set a final hearing on any remaining matters on the earliest available date that is more than 21 days after the Petition Date pursuant to Bankruptcy Rule 6003.

11

Section 1102; and (iv) other interested parties as listed on the service list.

Given the emergency nature of the relief requested herein, and the potential disruption to the Debtor's business that will ensue if such relief requested is not granted, the Debtor submits that no further notice need be given prior to granting the relief sought herein.

## V.    CONCLUSION

Based on the foregoing, Debtor respectfully requests that the Bankruptcy Court enter an order granting the relief requested herein, and:

1. Authorizing the maintenance of the Debtor's Pre-BK Account;
2. Waiving the fourteen-day stay applicable to any order approving the use of estate property imposed by Bankruptcy Rule 6004(h);
3. Waiving the 21-day time period imposed by Bankruptcy Rule 6003 to avoid immediate and irreparable harm; and
4. Granting such other relief as the Bankruptcy Court deems appropriate under the circumstances.

DATED:  April 25, 2024                    BG Law LLP


By:  /s/ Jessica S. Wellington
    David M. Poitras
    Susan K. Seflin
    Jessica S. Wellington
Proposed Attorneys for Debtor
and Debtor in Possession

2980728

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: **21650 Oxnard Street, Suite 500, Woodland Hills, CA 91367**.

A true and correct copy of the foregoing document entitled: **DEBTOR'S NOTICE OF EMERGENCY MOTION AND EMERGENCY MOTION FOR ORDER (I) AUTHORIZING THE CONTINUED USE OF THE DEBTOR'S CASH MANAGEMENT SYSTEM, (II) AUTHORIZING THE MAINTENANCE OF THE DEBTOR'S PRE-PETITION BANK ACCOUNTS, AND (III) REQUIRING BANKS TO RELEASE ADMINISTRATIVE HOLDS AND/OR FREEZES ON THE DEBTOR'S PRE-PETITION BANK ACCOUNTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document.  On **April 25, 2024,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Michael J Hauser**    michael.hauser@usdoj.gov
- **Susan K Seflin**    sseflin@bg.law
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov
- **Jessica Wellington**    jwellington@bg.law, ecf@bg.law

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**\*\*JUDGE'S COPY NOT REQUIRED IF LESS THAN 25 PAGES (GENERAL ORDER 23-01).**

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **April 25, 2024,** I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.Ind

**Served via email before 12:00 pm on the attached spreadsheet.**

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 25, 2024 | Jessica Studley | /s/ Jessica Studley |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*  **F 9013-3.1.PROOF.SERVICE**

| Debtor Name | Creditor Name | Email Address |
|---|---|---|
| MASHindustries, Inc. | BSP VBP PROPCO LLC | jill.brown@cushwake.com |
| MASHindustries, Inc. | Next Level Installations LLC | marlene@americancabinetworks.com |
| MASHindustries, Inc. | GL Veneer Company, Inc. | roseg@glveneer.com |
| MASHindustries, Inc. | RRS Finishers Group, LLC | accounting@mashstudios.com |
| MASHindustries, Inc. | Tile Expo Inc | dh@tileexpoinc.com |
| MASHindustries, Inc. | Royal Plywood Company, Llc | invoicing@royalplywood.com |
| MASHindustries, Inc. | West Coast Laminating, Inc. | rtritz@ebbradley.com |
| MASHindustries, Inc. | National Marble & Architectural Stone, Inc | gpmarich@roadrunner.com |
| MASHindustries, Inc. | Forest Plywood - MI | kmendez@forestplywood.com |
| MASHindustries, Inc. | Frank Recruitment Group | accountsna@frankgroup.com |
| MASHindustries, Inc. | Ortiz Custom Upholstery, Inc | adilene@ortizupholstery.com |
| MASHindustries, Inc. | California Timberline Inc | greg@caltimberline.com |
| MASHindustries, Inc. | CPS/Garten Corporation | jenifer@cpsgarten.com |
| MASHindustries, Inc. | IDS Interior Detail Solution | kurtc@idsolut.com |
| MASH STUDIOS, Inc. | MASHVENTURES | mblemel@mashventures.net |
| MASH STUDIOS, Inc. | Great Openings | kasiala@metalworks1.com |
| MASH STUDIOS, Inc. | Fabcon, Inc. | accounting@fabcon.com |
| MASH STUDIOS, Inc. | Baresque USA LLC | cs@baresque.us |
| MASH STUDIOS, Inc. | Suddath Relocation Systems of Oregon LLC | jeannie.friedl@suddath.com |
| MASH STUDIOS, Inc. | Concentric Spaces | chris@concentricspaces.com |
| MASH STUDIOS, Inc. | Concentric Spaces | jrizzardi@cairncross.com |
| MASH STUDIOS, Inc. | GLC Millworks | julie@glcmillworks.com |
| MASH STUDIOS, Inc. | Forest Plywood Co. | mbarrass@forestplywood.com |
| MASH STUDIOS, Inc. | Big Red Machine Shop | steve@bigredmachineshop.com |
| MASH STUDIOS, Inc. | Nace Sheet Metal Corp | lily@nacesheetmetal.com |
| MASH STUDIOS, Inc. | ORACLE Netsuite | collectionsteam_us@oracle.com |
| MASH STUDIOS, Inc. | MI Concepts LLC | michelle@mi-concepts.com |
| MASH STUDIOS, Inc. | Contract Installations, Inc. | stevemajcherek@aol.com |
| MASH STUDIOS, Inc. | Wing Partners LLC | michael@wingpartners.com |
| MASH STUDIOS, Inc. | OT Logistics Freight Transportation | invoicing@ot-logisticsllc.com |
| MASH STUDIOS, Inc. | Oncore Pro | mschmitz@systechs.com |
| Both | BSP VBP PROPCO, LLC | ROdson@soollp.com |
| Both | Counsel for SBA | elan.levey@usdoj.gov |