DAVID M. POITRAS – Bar No. 141309
SUSAN K. SEFLIN – Bar No. 213865
JESSICA S. WELLINGTON – Bar No. 324477
BG LAW LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone:  (818) 827-9000
Facsimile:  (818) 827-9099
Email:       dpoitras@bg.law
              sseflin@bg.law
              jwellington@bg.law

Proposed Attorneys for Chapter 11 Debtor and
Debtor in Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>Mash Studios, Inc., | Case No. 8:24-bk-11048-TA<br><br>Chapter 11<br><br>**NOTICE OF EMERGENCY MOTION AND EMERGENCY MOTION OF DEBTOR FOR AN ORDER (1) AUTHORIZING, BUT NOT REQUIRING, DEBTOR TO PAY PREPETITION (A) WAGES, SALARIES, AND OTHER COMPENSATION, (B) EMPLOYEE MEDICAL, WORKERS' COMPENSATION, PAID TIME OFF, AND SIMILAR BENEFITS, AND (C) REIMBURSABLE EMPLOYEE EXPENSES; AND (2) AUTHORIZING AND DIRECTING APPLICABLE BANKS AND OTHER FINANCIAL INSTITUTIONS TO RECEIVE, PROCESS, HONOR, AND PAY CHECKS PRESENTED FOR PAYMENT AND TO HONOR FUND TRANSFER REQUESTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>*Declaration of Lisa Boardman Filed Concurrently Herewith*<br><br>**Hearing:**<br>Date:     April 26, 2024<br>Time:     11:30 a.m.<br>Place:    Courtroom 5B - Via Zoom.gov only<br>              411 West Fourth Street<br>              Santa Ana, CA 92701 |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

MEMORANDUM OF POINTS AND AUTHORTIES ...................................................................4

I.    FACTUAL BACKGROUND...................................................................................................4

    A.    General Case Background...........................................................................................4

    B.    Description of the Debtors' Businesses .....................................................................4

    C.    The Debtors' Management Structure ........................................................................5

    D.    Circumstances Impacting the Debtor's Operations and Reason for the
    Bankruptcy Filing .....................................................................................................5

    E.    The Debtors' Workforce ...........................................................................................6

    F.    Prepetition Wages .....................................................................................................7

    G.    Employee Benefits....................................................................................................8

    H.    Reimbursable Expenses .........................................................................................10

    I.    Paid Time Off .........................................................................................................10

    J.    Summary of Employee Obligations........................................................................10

II.    ARGUMENT ......................................................................................................................11

    A.    The Court Has Authority to Authorize Payment of Employee Obligations. .........11

    B.    The Estate Will Suffer No Prejudice As a Result of the Motion Because the
    Prepetition Wages, Employee Benefits, and Employee Expenses are Priority
    Claims Under Bankruptcy Code Section 507(a)(4). ...............................................13

    C.    Honoring of Checks and Transfers Related to Employee Obligations and
    Maintenance of Payroll Accounts. .........................................................................14

III.    CONCLUSION...................................................................................................................15

# TABLE OF AUTHORITIES

Page

## CASES

*In re All Seasons Industries, Inc.*,
    121 B.R. 822 (Bankr. N.D. Ind. 1990)................................................................14

*In re Chateaugay Corp.*,
    116 B.R. 887 (Bankr. S.D.N.Y. 1990)................................................................11

*In re Gulf Air, Inc.*,
    112 B.R. 152 (Bankr. W.D. La. 1989)................................................................12

*In re Ionosphere Clubs, Inc.*,
    98 B.R. 174 (Bankr. S.D.N.Y. 1989)................................................................11

*In re Lehigh & New England Railway Co.*,
    657 F.2d 570 (3d Cir. 1981)................................................................11

*In re Pacific Forest Industries, Inc.*,
    95 B.R. 740 (Bankr. C.D. Cal. 1989)................................................................14

## STATUTES

11 U.S.C. § 105(a) ................................................................11

11 U.S.C. § 1107(a) ................................................................4

11 U.S.C. § 1108 ................................................................4

11 U.S.C. § 507(a)(4) ................................................................8, 11, 13, 14

11 U.S.C. § 507(a)(8) ................................................................8

11 U.S.C. § 507(a)(8)(C) ................................................................8

## RULES

Local Bankruptcy Rule 2080-1(a)(6)................................................................12

**TO THE HONORABLE THEODOR C. ALBERT, CHIEF UNITED STATES BANKRUPTCY JUDGE, SECURED LENDERS, CREDITORS HOLDING THE TWENTY LARGEST UNSECURED CLAIMS, AND THE OFFICE OF THE UNITED STATES TRUSTEE:**

**PLEASE TAKE NOTICE** that a hearing will be held on April 26, 2024 at 11:30 a.m. via Zoom.gov only before the Honorable Theodor C. Albert, Chief United States Bankruptcy Judge for the Central District of California, for the Court to consider the motion (the "Motion") filed by Mash Studios, Inc., a California corporation and the chapter 11 debtor and debtor in possession herein (the "Debtor" or "Studios"), for entry of an order pursuant to sections 105(a), 363(b), 507(a), 1107(a), and 1108 of Title 11 of the United States Code ("Bankruptcy Code"), (1) authorizing, but not directing, the Debtor to pay or honor in its discretion certain Employee Obligations (defined in the annexed Memorandum of Points and Authorities) and (2) authorizing and directing the applicable banks and other financial institutions to receive, process, honor, and pay all checks presented for payment and to honor all electronic payment requests made by the Debtor relating to the foregoing.

Studios was formed in 2002 and designs custom office furniture for large corporations. The Debtor's affiliate, MASHindustries, Inc. [1] was formed in 2013 and specializes in commercial furniture manufacturing and architectural millwork ("Industries" and collectively, with the Debtor, the "Debtors").

Industries employs 34 employees ("Employees") at its manufacturing facility located in Buena Park, California and Studios employs 7 employees who primarily work from home (and occasionally work out of the Buena Park facility). The Debtor's Employees are all paid twice a month (on or about the 1st and 15th day of the month) in arrears for the preceding period, as shown in the "Payroll Summary" spreadsheet attached hereto as **Exhibit 1** and as **Exhibit 1** to the Declaration of Lisa L. Boardman (the "Boardman Declaration") filed concurrently herewith. The Debtor commenced its bankruptcy case on April 24, 2024, and therefore seeks Court approval to pay its

---

[1] Industries filed its own chapter 11 case, Bankr. Case No. 8:24-bk-11046-TA, along with the Debtor's chapter 11 filing. The Debtor and Industries have concurrently filed a motion for entry of an order jointly administering the two cases.

employees for the portion of their upcoming paycheck that arises out of the pre-petition time period of April 16, 2024 through and including the petition date of April 24, 2024. The Debtor also seeks to continue to honor its pre-petition paid time off and other related accruals.

The Debtor's employees are vital to the continued operation of the Debtor's business and its successful reorganization.  Payment of and otherwise honoring the Employee Obligations is necessary to continue the Debtor's business operations, and prevent the Debtor's employees from experiencing extreme personal hardship or seeking employment elsewhere.  Moreover, these claims are entitled to priority pursuant to sections 507(a)(4) and (a)(8) of the Bankruptcy Code and must be paid ahead of general unsecured claims; thus, Debtor's payment of the Employee Obligations in the ordinary course of business will not prejudice general unsecured creditors or materially affect the Debtor's bankruptcy estate.

**PLEASE TAKE FURTHER NOTICE** that if you wish to object to the relief sought by the Motion, you must appear at the hearing and file any responsive pleading in accordance with the deadline set forth in the Notice of Emergency Motions.  Your failure to timely object may be deemed by the Court to constitute consent to the relief requested herein.

**PLEASE TAKE FURTHER NOTICE** that the Motion is based on this Motion and attached Memorandum of Points and Authorities, the concurrently filed Boardman Declaration and evidence appended thereto, the arguments of counsel and other admissible evidence properly brought before the Court at or before the hearing on this Motion.

**WHEREFORE**, the Debtor respectfully requests that this Court enter an order granting the Motion in its entirety and:

1.    Authorizing, but not directing, Debtor to pay or honor in its discretion certain Employee Obligations more specifically described in the Motion,

2.    Authorizing and directing the applicable banks and other financial institutions to receive, process, honor, and pay all checks presented for payment and to honor all electronic payment requests made by the Debtor relating to the foregoing, and

2

3.      Granting such other and further relief as the Court deems just and proper under the circumstances.

DATED:  April 25, 2024              BG LAW LLP


By:  /s/ David M. Poitras
     David M. Poitras
     Susan K. Seflin
     Jessica S. Wellington
Proposed Attorneys for Chapter 11
Debtor and Debtor in Possession

3

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    FACTUAL BACKGROUND

#### A.    General Case Background

1.    On April 24, 2024, Mash Studios, Inc., a California corporation ("Studios" or the "Debtor"), filed a voluntary petition for relief under subchapter v of chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtor continues to operate its business and manage its affairs as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or committee has been appointed in the Debtor's chapter 11 case.

2.    Concurrently with the filing of the Debtor's bankruptcy petition, the Debtor's affiliate MASHindustries, Inc. ("Industries" and collectively, with the Debtor, the "Debtors") filed its own subchapter v chapter 11 bankruptcy proceeding, styled *In re MASHindustries, Inc.*, Bankr. Case No. 8:24-bk-11046-TA. Concurrently with the filing of this Motion, the Debtors have filed a motion for joint administration of their bankruptcy cases.

#### B.    Description of the Debtors' Businesses

3.    Studios, a California corporation, was formed in 2002 by Bernard Brucha and Mr. Brucha is the sole shareholder of Studios. Studios designs custom office furniture for large corporations such as Nike, Chanel and Google. In 2013, one of Studios suppliers went out of business and Mr. Brucha formed the Debtor to acquire those assets to begin a furniture and millwork manufacturing business. Mr. Brucha is the sole shareholder of Industries.

4.    Industries manufacturing operations are located in 7150 Village Drive, Buena Park, California (the "Buena Park Property"). The Debtor employs approximately 7 people and Studios has 34 employees. Industries' website is www.mashindustries.com and Studios' website is www.mashstudios.com.

5.    For the fiscal year 2023, Industries gross revenue was $5,001,733 and the Debtor's gross revenue was $9,066,031. Prior to Covid in 2020, the Debtors' combined business were historically profitable. Along with the commercial office market in general, the Debtors' businesses were hit extremely hard by the Covid pandemic, with new orders greatly reduced for 2020 through 2023. The Debtors' businesses have begun turning the corner in 2024 and the Debtors reduced their

overhead greatly by laying off approximately 30 employees, and closing Studios' headquarters and showrooms.  Industries has approximately $12 million in new orders on the books, and the Debtor has approximately $6 million in new orders on the book. The Debtors are projecting a return to profitability in April or May 2024.

### C.    The Debtors' Management Structure

6.    Both of the Debtors are California corporations. Bernard Brucha is the founder, Chief Executive Officer, and principal of both Debtors, and he is the sole shareholder of both Debtors.

7.    Lisa Boardman is the Chief Operating Officer and Chief Financial Officer for the Debtor.  Ms. Boardman has extensive knowledge regarding the Debtor's day-to-day operations and finances and is responsible for, among other things, maintaining the Debtors Employee Obligations (defined below).

### D.    Circumstances Impacting the Debtor's Operations and Reason for the Bankruptcy Filing

8.    Although Industries occupies the Buena Park Property, Studios is the tenant on the lease.  In 2023, Industries began having problems timely paying the rent of $86,000 a month on the Buena Park Property and as of the petition date, the Debtors are seven months behind on rent though they have paid March and April 2024 rent.[2]

9.    On January 10, 2024, Buchanan Street Partners (BSP"), the landlord for the Buena Park Property, served Studios with a three day notice to pay rent or quit.  While the Debtors responded to the three-date notice with a payment plan proposal, the Debtors were not able to make the full payment. Thereafter, on February 16, 2024, BSP filed an unlawful detainer action and obtained a writ of possession for the Buena Park Property.  On Friday, April 19, 2024, Studios was served with a *Notice to Vacate* the Buena Park Property on or before April 25, 2024 at 6:01 a.m. Industries manufacturing facility (the "Facility") located at the Buena Park Property is an 77,000 sq. ft. manufacturing facility, houses valuable equipment, and is vital to the Debtor's ongoing operations and return to profitability.  Industries' thirty-four Employees work out of the Facility and being

---

[2] The landlord holds a security deposit in the amount of $268,275.53, which it apparently has not applied to the outstanding balance.

locked out of the Facility by the Sheriff will decimate Industries' business and operations.  Industries

intends to relocate its manufacturing operations to a smaller facility, within 120 days of the Petition

Date, and proposes to pay BSP postpetition rent at the contract rate from the petition date through

the date that it vacates the premises.

10.    Combined, the Debtors have outstanding debt of approximately $7 million [$2.5

million in secured debt (SBA loans during Covid) and approximately $4.5 million in unsecured trade

debt (including the BSP debt)].  The Debtors intend to file a chapter 11 reorganizing plan to resolve

these debts in their chapter 11 cases.

11.    Without the chapter 11 cases, all manufacturing would cease indefinitely due to the

BSP writ of possession, and Industries would be forced to liquidate.  Through their chapter 11 cases,

the Debtors can remain as a going concern and keep 41 employees employed, and project significant

recoveries to their creditor constituencies through the chapter 11 plan process.

**E.    The Debtors' Workforce**

12.    Presently, the Debtors collectively employ 41 employees, with Industries employing

34 employees  and Studios employing 7 employees (the "Employees").  All of Industries' and

Studios' employees are located in the United States.  The Employees are all paid twice per month

(on or about the 5th and 20th day of the month) in arrears for the prior period, as shown in the

spreadsheet entitled "Payroll Summary," attached hereto as **Exhibit 1** and attached as Exhibit to the

Declaration of Lisa L. Boardman (the "Boardman Declaration") filed concurrently herewith.

13.    The following Employees are insiders of the Debtor:  Bernard Brucha and Lisa

Boardman (the "Insider Employees").  By this Motion, the Debtor seeks authority to pay all

obligations pertaining to Employees other than the Insider Employees.  With respect to the Insider

Employees, no payments will be made until the expiration of the notice period with regard to the

Notices of Insider Compensation to be served for each of them.

14.    As indicated above and discussed in more detail herein, the Debtor seeks authority to

pay and honor certain prepetition claims for, among other items, wages, salaries, and other

compensation including federal and state withholding taxes, payroll taxes, contributions to employee

benefit plans, retirement plans, accrued paid time off, and all other employment related benefits,

which the Debtor pays or provides in the ordinary course of its business (collectively, "Employee Obligations").

15.     In addition, the Debtor requests authority to pay the appropriate third parties the amounts that are deducted and withheld from Employees' paychecks ("Employee Deductions"), which are in most instances not property of the Debtor's estate, and to reimburse Employees for reimbursable expenses incurred by such employees prepetition in the ordinary course of business ("Employee Expenses").  By this Motion, the Debtor also seeks the general authority, in its discretion, to pay or honor the Employee Obligations, including the Employee Deductions and Employee Expenses with respect to all of its Employees, inclusive of the Insider Employees.

16.     Additionally, the Debtor seeks authority for and direction to applicable banks and other financial institutions with whom the Debtor does business, in accordance with the Debtor's instructions as may be provided by the Debtor, to receive, process, honor, and pay all checks presented for payment and to honor all electronic payment requests made by the Debtor which are or relate to the Employee Obligations.

**F.    Prepetition Wages**

17.     As discussed above, the Debtor employs 7 employees (some salaried, some hourly and one 1099).  The Debtor pays its salaried employees weekly (on Fridays),  in arrears.  Typically, a few days prior to each payroll date, funds are pulled by Paychex, the Debtor's payroll processor, to cover the payroll for the applicable periods.

18.     Also, in the ordinary course of its business, the Debtor deducts from its employees' paychecks (as applicable): (a) payroll taxes and the employees' portion of FICA and unemployment taxes, (b) employee contributions for health and disability related benefits, (c) employee contributions to 401(k) plans, and (e) other miscellaneous items (collectively, "Employee Deductions").  The Debtor forwards amounts equal to the Employee Deductions from its operating accounts to appropriate third-party recipients.

19.     Under ordinary conditions, the Debtor's next payroll for employees is scheduled for Friday, May 3, 2024, and relates to the payroll period of April 16, 2024 through April 30.  This payroll includes amounts for the prepetition period of April 16, 2024 through and including April 24,

2024 (the "Prepetition Period").

20.    The payroll amount associated with the Prepetition Period is expected to be in the aggregate amount of $16,981.83 (the "Prepetition Wages").  Attached hereto as **Exhibit 1** is a true and correct spreadsheet reflecting payroll for the Prepetition Period.

21.    As of the Petition Date, no Employee has a claim of more than $15,150 in Prepetition Wages on an individual basis.

22.    The Debtor seeks authority to continue with its payroll schedule in the ordinary course of its business and consequently to pay all Prepetition Wages as planned on the dates indicated above.  In all instances, due to the fact that no single Employee has a claim of more than $15,150 in Prepetition Wages, the Debtor will not make payroll distributions to any particular Employee in an amount that would exceed the allowable priority portion of such Employee's Prepetition Wages under section 507(a)(4) of the Bankruptcy Code.  The Debtor asserts that the costs associated with paying priority Employee wage claims are relatively minimal compared with the damage to the Debtor's estate that would ensue if Employee morale were disrupted by the Debtor's failure to meet its payroll obligations.

23.    In addition to the payment of Prepetition Wages, the Debtor is also seeking to be authorized, but not required, to pay all payroll taxes related to the Prepetition Wages, which the Debtor estimates to be approximately $1,091.51.  The foregoing payroll taxes are entitled to priority under section 507(a)(8). *See* 11 U.S.C. §§ 507(a)(8)(C).

**G.    Employee Benefits**

24.    The Debtor has established a variety of benefit plans and programs ("Employee Benefits") designed to assist its Employees and the Employees' eligible dependents in meeting certain financial burdens, including those that arise from illness, disability, and death.  The Employees receive Employee Benefits pursuant to the terms and policies established by the Debtor. The Debtor seeks authorization, but not direction, to pay or otherwise honor these Employee Benefits, which are described below.

25.    *Medical, Dental, Vision Insurance, Long-Term Disability, Basic Term Life Insurance*. The Debtor offers all full-time Employees basic medical, dental, and vision insurance, as well as

long-term disability and basic term life insurance.  The Debtor's medical insurance is provided by

United Healthcare and Kaiser.  All other insurance is provided by Guardian.  A portion of the cost

for each Employee's insurance is deducted from his or her regular paycheck, and the Debtor

contributes a portion as well.  To maintain employee morale and not unfairly impose hardships on its

workforce, the Debtor seeks authority to pay any outstanding unpaid premiums, deductibles, and/or

claims with respect to medical, dental, and vision insurance accrued prepetition, and to continue to

honor its prepetition policies relating to such insurance.  The Debtor believes it is current under these

obligations and that there are no arrears with respect to Employees' insurance.  The Debtor pays

approximately $7,500 a month in premiums to Kaiser, United Healthcare and Guardian.

26.     *Worker's Compensation Premiums*.  Additionally, the Debtor is obligated to pay

worker's compensation insurance premiums for its Employees.  Industries owes approximately

$16,000 on April 30, 2024 as the down payment on its worker's compensation insurance policy[3] and

Studios must pay $5,700 on or before April 30, 2024 for its annual worker's compensation premium.

The Debtor seeks authority to pay this obligation in the ordinary course of its business as part of its

Employee Obligations.

27.     *Retirement Benefits Plan*.  The Debtor offers eligible Employees the opportunity to

participate in a 401(k) Savings and Retirement Plan ("401(k) Plan").  If an Employee contributes the

full allowable contribution, the Debtor matches the Employee's contribution up to 3%. The balance

of the Employees' contributions are paid by the Employees.  In addition to the amount paid by the

Debtor, the Debtor, through Paychex, forwards amounts equal to the Employee's chosen

contributions from its operating accounts to appropriate third-party recipients on behalf of its

Employees, and thus seeks authority to continue the 401(k) Plan and forward any prepetition

amounts as necessary.  The Debtor's estimated contribution for the 401(k) Plan is approximately

$380.00 for the pre-petition period, in addition to the amount set forth below.  Additionally, the

Debtor owes approximately $16,000 to the 401(k) plan because a prior paycheck processor was

---

[3] The $16,000 and $5,700 payments need to be made on or before April 30, 2024 to avoid cancelation of the policies on May 1, 2024.  These expenses are also included in the cash collateral budget.

delinquent in preparing the necessary reporting.  Debtor will supplement this Motion to add the

detail on repayment of these amounts in connection with a further hearing on the Motion

**H.**    **Reimbursable Expenses**

28.    Employees may submit certain business-related expenses to the Debtor for

reimbursement.  These expenses include, among other things, car rental, meals, business supplies,

and other business-related costs, including those charged by Employees onto corporate credit cards.

As of the Petition Date, the Debtor believes that it has paid substantially all reimbursements to

employees except for  $350.00 (as set forth on **Exhibit 1**).   In the event that the Debtor owes any

other *de minimis* amount of reimbursements to any non-insider employee, the Debtor seeks

authority, but not direction, to pay these Employee Expenses and to continue to pay them

postpetition in the ordinary course of business.

**I.**    **Paid Time Off**

29.    By the Motion, the Debtor is also seeking authority, but not direction, to permit

Employees to use earned, accrued prepetition vacation time, personal time, sick, bereavement and

other leave in the ordinary course (the "Paid Time Off").  The Debtor anticipates that the Paid Time

Off will continue to accrue post-petition, and requests authority to allow it to be used without

restrictions other than those imposed by the Debtor's normal human resources policies.  See **Exhibit 2** hereto.

**J.**    **Summary of Employee Obligations.**

30.    In summary, the Debtor seeks authority, in its sole discretion, to honor and pay all

"Employee Obligations," more specifically described as follows:

　　　　a.    Honor and pay, when due, all Prepetition Wages;

　　　　b.    Pay the Debtor's share of applicable employment taxes in connection with the

Prepetition Wages;

　　　　c.    Make all appropriate Employee Deductions and to forward the Employee

Deductions to the appropriate agency or plan administrator, including those related to the 401(k)

Plan;

　　　　d.    Honor and pay, when due, all Employee Expenses;

e.      Honor all Paid Time Off in the ordinary course of business; and

f.      Continue providing active employees with the Employee Benefits and to pay, or otherwise honor, earned prepetition Employee Benefits.

**II.     ARGUMENT**

31.     Due to the timing of the commencement of this case, certain Employees accrued prepetition salaries and wages for which payment would otherwise be made postpetition.  Other forms of compensation related to prepetition services, more fully described above, have not yet been paid to or for the benefit of the Employees because such benefits, although accrued either in whole or in part prior to the Petition Date, were not payable at such time, but rather will become payable in the immediate future in the ordinary course of business.

32.     The Debtor submits that the Court has authority to authorize the relief requested herein in light of the prejudice that will result to the Debtor if it is not permitted to honor and pay the Employee Obligations.  Furthermore, no prejudice will result to the Debtor's bankruptcy estate because the Employee Obligations are priority claims under Bankruptcy Code section 507(a)(4), which are paid prior to payments to general unsecured creditors.

**A.      The Court Has Authority to Authorize Payment of Employee Obligations.**

33.     Pursuant to section 105(a) of the Bankruptcy Code, the Court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Where business exigencies require, courts have exercised their equitable powers under section 105(a) to authorize debtors to pay prepetition claims of particular creditors essential to continued operations, including those of employee claims for prepetition wages.  *See In re Ionosphere Clubs, Inc*., 98 B.R. 174 (Bankr. S.D.N.Y. 1989).  This "necessity of payment doctrine," which empowers courts to authorize a debtor to pay prepetition claims, is critical to any non-liquidating chapter 11 case, because it permits "'immediate payment of claims of creditors where those creditors will not supply services or materials essential to the conduct of the business until their pre-reorganization claims have been paid.'"  *Id.* at 176 (quoting *In re Lehigh & New England Railway Co.,* 657 F.2d 570, 581 (3d Cir. 1981)).  Indeed, continued operation and rehabilitation of the debtor is a paramount goal in chapter 11 bankruptcies.  *See In re Ionosphere Clubs, Inc*., 98 B.R.

at 176.  *See also In re Chateaugay Corp.,* 116 B.R. 887, 989 (Bankr. S.D.N.Y. 1990) ("[E]mployee

good will and contentment is an asset which is vital to the continuation of a debtor's business

operation and its ability to effectively reorganize during the Chapter 11 process."); *In re Gulf Air,*

*Inc.,* 112 B.R. 152, 153 (Bankr. W.D. La. 1989) (payment of employee prepetition wages is

permissible in light of the fact that "retention of skills, organization, and reputation for performance

must be considered valuable assets contributing to going concern value and aiding rehabilitation

where that is possible").

34.    Furthermore, Bankruptcy Courts in the Central District of California authorize a

debtor's payment of prepetition wages and obligations where such request is supported by evidence

that establishes the following:

| | |
|---|---|
| (A) | The employees are still employed; |
| (B) | The necessity for payment; |
| (C) | The benefit of the procedures; |
| (D) | The prospect of reorganization; |
| (E) | Whether the employees are insiders; |
| (F) | Whether the employees' claims are within the limits established by section 507 of the Bankruptcy Code; and |
| (G) | The payment will not render the estate administratively insolvent. |

*See* Local Bankruptcy Rule 2081-1(a)(6).  The Debtor respectfully submits that the relief requested

herein is appropriate and necessary in light of the foregoing.

35.    As noted above, the Debtor's goal in this chapter 11 case is to reorganize its affairs

and continue operating as a successful office design and manufacturing company.  It is imperative to

the accomplishment of Debtor's goals in this case that the Debtor's employees make a smooth

transition into the chapter 11 process.  Any disruption to payment of Employee Obligations will

prove destructive to the Debtor's goals herein because it will hurt employee morale at a particularly

sensitive time for all employees, especially considering the small number of Employees employed

by the Debtor.  Indeed, each Employee is crucial to the continuation of Debtor's business operations.

Due to the timing of the filing of this case, certain Employee Obligations may have accrued, but

were unpaid prior to the Petition Date.  If the Debtor is not permitted to meet all payroll-related obligations in the ordinary course of business, the Debtor could suffer unmanageable employee outrage or turnover to the detriment of all parties to the Debtor's bankruptcy estate.  Any significant disruption will adversely impact the Debtor's business and result in immediate and irreparable harm to the estate.  Simply put, Debtor's Employees are essential to the Debtor being able to continue its business operations and thus successfully reorganize, and thus approval for payment of ongoing Employee Obligations is critical to the Debtor's success in this case.

36.    The Debtor submits that the amounts to be paid pursuant to the Employee Obligations are relatively small in light of the importance and necessity of preserving the Employees' services and morale, and the difficulties and losses the Debtor will suffer if Employees leave.  Even the slightest delay in providing this relief to its Employees will hamper operations and damage the Debtor's estate.  These payments will not render this estate administratively insolvent.  Moreover, as set forth herein, and the Debtor's companion First-Day Motions, the Debtor's prospects for a successful reorganization are strong.

37.    Additionally, the Debtor proposes to make immediate payment of Employee Obligations for non-insider employees only, all of whom are currently employed by the Debtor.  The Debtor will not make payments to Insider Employees until after the notice period has passed regarding the Notices of Insider Compensation filed concurrently herewith.

**B.    The Estate Will Suffer No Prejudice As a Result of the Motion Because the Prepetition Wages, Employee Benefits, and Employee Expenses are Priority Claims Under Bankruptcy Code Section 507(a)(4).**

38.    Furthermore, the bankruptcy estate—specifically the general unsecured creditors of this case—will suffer no prejudice if the relief requested herein is granted because the Prepetition Wages, Employee Benefits, and Employee Expenses are entitled to a priority under section 507(a)(4) of the Bankruptcy Code.  Indeed, each Employee is entitled to a priority claim for:

> [A]llowed unsecured claims, but only to the extent of $15,150 . . . earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for–
>
> (A)    wages, salaries, or commissions, including vacation,

severance, and sick leave pay earned by an individual; or

(B) sales commissions earned by an individual . . . acting as an independent contractor in the sale of goods or services for the debtor in the ordinary course of the debtor's business if, and only if, during the 12 months preceding that date, at least 75 percent of the amount that the individual or corporation earned by acting as an independent contractor in the sale of goods or services was earned from the debtor.

11 U.S.C. § 507(a)(4).  To the extent the Prepetition Wages and related payments for which the Debtor seeks authority to pay were earned within 180 days of the Petition Date, Employees' claims for payment of such compensation are entitled to priority pursuant to the above.  The Debtor's request for authority to pay these claims now therefore merely constitutes a request to accelerate payment to avoid the devastation of employee morale and the operation of Debtor's business.  Moreover, the maintenance of Employee morale and adequate staffing preserves the going concern value of the business which ultimately inures to the benefit of Debtor's creditors.

39.    The Debtor's relationship with its Employees, including the terms and conditions of their employment, are matters subject to the Debtor's business judgment and may be managed by the Debtor in the ordinary course of its business.  *See In re All Seasons Industries, Inc.*, 121 B.R. 822, 825–26 (Bankr. N.D. Ind. 1990); *In re Pacific Forest Industries, Inc.*, 95 B.R. 740, 743 (Bankr. C.D. Cal. 1989) ("Employees do not need court permission to be paid and are usually paid as a part of the ongoing operation of the business.").  The maintenance of Debtor's benefit programs is an important part of the Debtor's relationship with its Employees that is within its business judgment, as is the Debtor's ability to continue honoring its Paid Time Off policies for the benefit of its Employees.

**C.    Honoring of Checks and Transfers Related to Employee Obligations and Maintenance of Payroll Accounts.**

40.    Finally, the Debtor requests that all applicable banks and other financial institutions be authorized and directed to receive, process, honor, and pay all checks presented for payment and to honor all transfer requests made by the Debtor related to Employee Obligations, whether such checks were presented or fund transfer requests were submitted prior to or after the Petition Date (including checks that have been presented and dishonored).  The Debtor represents that these checks are drawn on an identifiable payroll account.  Accordingly, checks other than those for

Employee Obligations will not be honored inadvertently.  Moreover, pursuant to a budget that the Debtor filed with the Court as part of its motion to approve use of cash collateral, the Debtor expects to have sufficient funds to pay all Employee Obligations on an ongoing basis and in the ordinary course of business.

**III.    CONCLUSION**

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order granting the Motion in its entirety and:

1.    Authorizing, but not directing, Debtor to pay or honor in its discretion the Employee Obligations,

2.    Authorizing and directing the applicable banks and other financial institutions to receive, process, honor, and pay all checks presented for payment and to honor all electronic payment requests made by the Debtor relating to the foregoing, and

3.    Granting such other and further relief as the Court deems just and proper under the circumstances.

DATED:  April 25, 2024                                BG LAW LLP


                                                                By:   /s/ David M. Poitras
                                                                David M. Poitras
                                                                Susan K. Seflin
                                                                Jessica S. Wellington
                                                                Proposed Attorneys for Chapter 11 Debtor
                                                                and Debtor in Possession

# EXHIBIT 1

| Company name | Employee ID | Department | Supports | Type | State | Payroll April 16-24, 2024 | Overtime Amounts | Overtime Hours | Unreimbursed Expenses | Total ER Reimbursed Tech | Total Earnings | ER Payroll Tax | Total | Total Insider |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mash Studios Inc | 116 | Production Design | Studios | Salaried | CA | 1,706.67 | | | 0 | 50.00 | 1,756.67 | 119.47 | 1,876.14 | |
| Mash Studios Inc | A01L | Account Management | Studios | Salaried | CA | 2,000.13 | | | 0 | 50.00 | 2,050.13 | 140.01 | 2,190.14 | |
| Mash Studios Inc | A01J | Concept Design | Studios | Salaried | CA | 2,346.67 | | | 0 | 50.00 | 2,396.67 | 164.27 | 2,560.94 | |
| Mash Studios Inc | A010 | Principal | Studios \| Industries | Salaried | CA | 3,747.05 | | | 0 | - | 3,747.05 | 262.29 | 4,009.35 | 4,009.35 |
| Mash Studios Inc | 42 | Finance | Studios \| Industries | Salaried | CA | 1,774.93 | | | 0 | 50.00 | 1,824.93 | 124.25 | 1,949.18 | |
| Mash Studios Inc | 39 | LAXseries | Studios | Contract | CA | 896.00 | | | 0 | 50.00 | 946.00 | - | 946.00 | |
| Mash Studios Inc | A00Z | Production Design | Studios | Salaried | CA | 2,773.33 | | | 0 | 50.00 | 2,823.33 | 194.13 | 3,017.46 | |
| Mash Studios Inc | 38 | Finance | Studios \| Industries | Hourly | CA | 1,244.16 | 492.89 | 12.17 | 0 | 50.00 | 1,787.05 | 87.09 | 1,874.14 | |
| | | | | | | **16,488.94** | **492.89** | **12.17** | **0.00** | **350.00** | **17,331.83** | **1,091.51** | **18,423.34** | **4,009.35** |
| | | | | | | | | | | | 17,331.83 | | 18,423.34 | |
| | | | | | | | | | | | <> | | <> | |

**401K Employer Contribution**                                                                                                                   **380.86**

# EXHIBIT 2

18

| Employee Number | Time Off Type | Accrued Hours | Accrued Hours Liability | Adj Hours | Used Hours | Hours Balance |
|---|---|---|---|---|---|---|
| 116 | Sick | 48.00 | $1,476.87 | 0.00 | 8.00 | 40.00 |
| 116 | Vacation | 18.67 | $574.34 | 11.32 | 16.00 | 13.99 |
| A01L | Sick | 48.00 | $1,730.81 | 0.00 | 0.00 | 48.00 |
| A01L | Vacation | 37.33 | $1,346.19 | 208.00 | 13.50 | 231.83 |
| A01J | Sick | 48.00 | $2,030.69 | 0.00 | 4.00 | 44.00 |
| A01J | Vacation | 28.00 | $1,184.57 | 23.09 | 8.00 | 43.09 |
| 42 | Sick | 48.00 | $1,535.94 | 0.00 | 0.00 | 48.00 |
| 42 | Vacation | 18.67 | $597.31 | 18.64 | 0.00 | 37.31 |
| 39 | Sick | 0.00 | $0.00 | 0.00 | 0.00 | 0.00 |
| 39 | Vacation | 0.00 | $0.00 | 0.00 | 0.00 | 0.00 |
| A00Z | Sick | 48.00 | $2,399.91 | 0.00 | 0.00 | 48.00 |
| A00Z | Vacation | 37.33 | $1,866.59 | 74.60 | 12.00 | 99.93 |
| 38 | Sick | 48.00 | $1,296.00 | 0.00 | 0.00 | 48.00 |
| 38 | Vacation | 18.67 | $504.00 | 21.33 | 0.00 | 40.00 |

**19**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
**21650 Oxnard Street, Suite 500, Woodland Hills, CA 91367.**

A true and correct copy of the foregoing document entitled**: NOTICE OF EMERGENCY MOTION AND EMERGENCY MOTION OF DEBTOR FOR AN ORDER (1) AUTHORIZING, BUT NOT REQUIRING, DEBTOR TO PAY PREPETITION (A) WAGES, SALARIES, AND OTHER COMPENSATION, (B) EMPLOYEE MEDICAL, WORKERS' COMPENSATION, PAID TIME OFF, AND SIMILAR BENEFITS, AND (C) REIMBURSABLE EMPLOYEE EXPENSES; AND (2) AUTHORIZING AND DIRECTING APPLICABLE BANKS AND OTHER FINANCIAL INSTITUTIONS TO RECEIVE, PROCESS, HONOR, AND PAY CHECKS PRESENTED FOR PAYMENT AND TO HONOR FUND TRANSFER REQUESTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **April 25, 2024,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Michael J Hauser**    michael.hauser@usdoj.gov
- **Susan K Seflin**    sseflin@bg.law
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov
- **Jessica Wellington** jwellington@bg.law, ecf@bg.law

☐    Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**\*\*JUDGE'S COPY NOT REQUIRED IF LESS THAN 25 PAGES (GENERAL ORDER 23-01).**

☐    Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **April 25, 2024,** I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**SERVED VIA EMAIL BEFORE 12:00 PM ON THE ATTACHED SPREADSHEET.**

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 25, 2024 | Mela Galvan | /s/ Mela Galvan |
|----------------|-------------|-----------------|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**

| Debtor Name | Creditor Name | Email Address |
|---|---|---|
| MASHindustries, Inc. | BSP VBP PROPCO LLC | jill.brown@cushwake.com |
| MASHindustries, Inc. | Next Level Installations LLC | marlene@americancabinetworks.com |
| MASHindustries, Inc. | GL Veneer Company, Inc. | roseg@glveneer.com |
| MASHindustries, Inc. | RRS Finishers Group, LLC | accounting@mashstudios.com |
| MASHindustries, Inc. | Tile Expo Inc | dh@tileexpoinc.com |
| MASHindustries, Inc. | Royal Plywood Company, Llc | invoicing@royalplywood.com |
| MASHindustries, Inc. | West Coast Laminating, Inc. | rtritz@ebbradley.com |
| MASHindustries, Inc. | National Marble & Architectural Stone, Inc | gpmarich@roadrunner.com |
| MASHindustries, Inc. | Forest Plywood - MI | kmendez@forestplywood.com |
| MASHindustries, Inc. | Frank Recruitment Group | accountsna@frankgroup.com |
| MASHindustries, Inc. | Ortiz Custom Upholstery, Inc | adilene@ortizupholstery.com |
| MASHindustries, Inc. | California Timberline Inc | greg@caltimberline.com |
| MASHindustries, Inc. | CPS/Garten Corporation | jenifer@cpsgarten.com |
| MASHindustries, Inc. | IDS Interior Detail Solution | kurtc@idsolut.com |
| MASH STUDIOS, Inc. | MASHVENTURES | mblemel@mashventures.net |
| MASH STUDIOS, Inc. | Great Openings | kasiala@metalworks1.com |
| MASH STUDIOS, Inc. | Fabcon, Inc. | accounting@fabcon.com |
| MASH STUDIOS, Inc. | Baresque USA LLC | cs@baresque.us |
| MASH STUDIOS, Inc. | Suddath Relocation Systems of Oregon LLC | jeannie.friedl@suddath.com |
| MASH STUDIOS, Inc. | Concentric Spaces | chris@concentricspaces.com |
| MASH STUDIOS, Inc. | Concentric Spaces | jrizzardi@cairncross.com |
| MASH STUDIOS, Inc. | GLC Millworks | julie@glcmillworks.com |
| MASH STUDIOS, Inc. | Forest Plywood Co. | mbarrass@forestplywood.com |
| MASH STUDIOS, Inc. | Big Red Machine Shop | steve@bigredmachineshop.com |
| MASH STUDIOS, Inc. | Nace Sheet Metal Corp | lily@nacesheetmetal.com |
| MASH STUDIOS, Inc. | ORACLE Netsuite | collectionsteam_us@oracle.com |
| MASH STUDIOS, Inc. | MI Concepts LLC | michelle@mi-concepts.com |
| MASH STUDIOS, Inc. | Contract Installations, Inc. | stevemajcherek@aol.com |
| MASH STUDIOS, Inc. | Wing Partners LLC | michael@wingpartners.com |
| MASH STUDIOS, Inc. | OT Logistics Freight Transportation | invoicing@ot-logisticsllc.com |
| MASH STUDIOS, Inc. | Oncore Pro | mschmitz@systechs.com |
| Both | BSP VBP PROPCO, LLC | ROdson@soollp.com |
| Both | Counsel for SBA | elan.levey@usdoj.gov |
| Both | US Trustee's Office | michael.hauser@usdoj.gov |