DAVID M. POITRAS – Bar No. 141309
SUSAN K. SEFLIN - Bar No. 213865
JESSICA S. WELLINGTON - Bar No. 324477
BG LAW LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone: (818) 827-9000
Facsimile: (818) 827-9099
Email:     dpoitras@bg.law
           sseflin@bg.law
           jwellington@bg.law

Proposed Attorneys for Chapter 11 Debtor and
Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>Mash Studios, Inc., | Case No. 8:24-bk-11048-TA<br><br>Chapter 11<br><br>**OMNIBUS DECLARATION OF LISA BOARDMAN IN SUPPORT OF FIRST DAY MOTIONS**<br><br>**Hearing:**<br>Date:    April 26, 2024<br>Time:    11:30 a.m.<br>Place:   Courtroom 5B - Via Zoom.gov only<br>         411 West Fourth Street<br>         Santa Ana, CA 92701 |

I, Lisa Boardman, hereby declare as follows:

1.     I am the Chief Operating Officer and Chief Financial Officer of Mash Studios, Inc., the chapter 11 debtor in possession herein ("Studios" or the "Debtor"). I have held this position since March of 2023. I perform all of the duties of a Chief Financial Officer and Chief Operating Officer, including the oversight of operations, finance, customer service, human resources and information technology. I hold a bachelor's degree in applied physics from Columbia University

1

2980732

and an MBA in economics from Columbia University. Prior to working for the Debtor, I worked for a number of different companies as CFO and controller.

2.   I am authorized to make this declaration on behalf of the Debtor. I have personal knowledge of the facts contained in this declaration and if called as a witness, I would and could testify thereto under oath.

3.   I make this declaration in support of the Debtor's emergency first day motions (collectively, the "First Day Motions"):

a.   *Emergency Motion for Order (1) Authorizing, But Not Requiring, the Debtor to Pay Prepetition (A) Wages, Salaries, and Other Compensation, (B) Employee Medical, Workers' Compensation and Similar Benefits, and (C) Reimbursable Employee Expenses; and (2) Authorizing and Directing Applicable Banks and Other Financial Institutions to Receive, Process, Honor, and Pay Checks Presented for Payment and to Honor Fund Transfer Requests* (the "Wage Motion");

b.   *Emergency Motion for Authority to (A) Use Cash Collateral on an Interim Basis Pending a Final Hearing; (B) Grant Replacement Liens; and (C) Set Final Hearing* (the "Cash Collateral Motion"); and

c.   *Emergency Motion for Order (I) Authorizing the Continued Use of the Debtor's Cash Management System, (II) Authorizing the Maintenance of the Debtor's Pre-Petition Bank Accounts, and (III) Requiring Banks to Release Administrative Holds and/or Freezes on the Debtor's Pre-Petition Bank Accounts* (the "Cash Management Motion").

4.   On April 24, 2024, the Debtor filed a voluntary petition for relief under subchapter v of chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtor continues to operate its business and manage its affairs as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or committee has been appointed in the Debtor's chapter 11 case.

5.   Concurrently with the filing of the Debtor's bankruptcy petition, the Debtor's affiliate MASHindustries, Inc. ("Industries" and collectively, with the Debtor, the "Debtors") filed its own subchapter v chapter 11 bankruptcy proceeding, styled *In re Mash Studios, Inc.*, Bankr. Case No.

8:24-bk-11046-TA. The Debtors have filed a motion for joint administration of their bankruptcy cases.

## I.    Relevant Background

### A.    Description of the Debtors' Businesses

6.    Studios, a California corporation, was formed in 2002 by Bernard Brucha and Mr. Brucha is the sole shareholder of Studios. Studios designs custom office furniture for large corporations such as Nike, Chanel and Google. Industries, also a California corporation, was formed in 2013, and is a furniture and millwork manufacturer.

7.    Industries' manufacturing operations are located in 7150 Village Drive, Buena Park, California (the "Buena Park Property"). Industries employs approximately 34 people and Studios has 7 employees. Industries' website is www.mashindustries.com and Studios' website is www.mashstudios.com.

8.    For the fiscal year 2023, Industries' gross revenue was $5,001,733 and Studios' gross revenue was $9,066,031. To the best of my knowledge, prior to Covid in 2020, the Debtors' combined businesses were historically profitable. Along with the commercial office market in general, the Debtors' businesses were hit extremely hard by the Covid pandemic, with new orders greatly reduced for 2020 through 2023. The Debtors' businesses have begun turning the corner in 2024 and the Debtors reduced their overhead greatly by laying off approximately 30 employees, and closing Studios' headquarters and showrooms. The Debtor has approximately $12 million in new orders on the books, and Studios has approximately $6 million in new orders on the book. The Debtors are projecting a return to profitability in April or May 2024.

### B.    The Debtors' Prepetition Lender

9.    The Debtors' prepetition lender is the U.S. Small Business Administration (the "Lender"). As of April 23, 2024, the Lender is owed $2 million by Studios pursuant to a loan agreement, promissory note and security agreement. As of April 23, 2024, the Lender is owed $500,000 by Industries pursuant to a loan agreement, promissory note and security agreement. The Lender appears to have perfected its security interest against both Debtors by recording UCC-1

financing statements with the California Secretary of State. To the best of my knowledge, the only other secured claims asserted against the Debtor are equipment liens.

### C.  Circumstances Impacting the Debtors' Operations and Reason for the Bankruptcy Filing

10. Prior to February of 2024, Industries and Studios did not have the same address. Studios had studios and offices in Los Angeles, and Industries occupied the Buena Park Property. As part of their effort to reduce expenses, Studios gave up its offices and studios in Los Angeles in February of 2024, and now Studios' employees either work from home or at the Buena Park Property as necessary. Although Industries has always occupied the Buena Park Property with its manufacturing facility, Studios is the named tenant on the lease. In 2023, Industries began having problems timely paying the rent of $86,000 a month on the Buena Park Property and as of the petition date, the Debtors are seven months behind on rent though they have paid March and April 2024 rent.[1]

11. On January 10, 2024, Buchanan Street Partners (BSP"), the landlord for the Buena Park Property, served Studios with a three day notice to pay rent or quit. While the Debtors responded to the three-date notice with a payment plan proposal, the Debtors were not able to make the full payment and their payment plan was rejected by BSP. Thereafter, on February 16, 2024, BSP filed an unlawful detainer action and obtained a writ of possession for the Buena Park Property. On Friday, April 19, 2024, Studios was served with a *Notice to Vacate* the Buena Park Property on or before April 25, 2024 at 6:01 a.m. Industries manufacturing facility (the "Facility") located at the Buena Park Property is a 77,000 sq. ft. manufacturing facility, houses valuable equipment, and is vital to the Debtor's ongoing operations and return to profitability. Industries' thirty-four employees work out of the Facility and being locked out of the Facility by the Sheriff will decimate Industries' business and operations. Industries intends to relocate its manufacturing operations to a smaller facility, hopefully within 120 days of the Petition Date, and proposes to pay BSP postpetition rent at the contract rate from the petition date through the date that it vacates the premises.

---

[1] The landlord holds a security deposit in the amount of $268,275.53, which it apparently has not applied to the outstanding balance.

12. Combined, the Debtors have outstanding debt of approximately $7 million [$2.5 million in secured debt (SBA loans during Covid) and approximately $4.5 million in unsecured trade debt (including the BSP debt)]. The Debtors intend to file a joint chapter 11 reorganizing plan to resolve these debts in their chapter 11 cases.

## II.   First Day Motions

13. The Debtors commenced their chapter 11 cases to reorganize their businesses, protect their assets and continue as going concerns to keep the Debtors' approximately 41 employees employed. The Debtors' transition into their chapter 11 cases must be comprehensively and effectively organized to avoid disruptions of their business operations and enable them to operate smoothly in bankruptcy, avoid loss of employee morale, and sustain customer loyalty.

14. I have reviewed and am generally familiar with the contents of each of the First Day Motions. I believe that the relief sought in each of the First Day Motions is necessary to enable the Debtors to operate in their chapter 11s case with minimal disruption and loss of productivity or value. I also believe that the First Day Motions are vital to the Debtors' reorganization efforts and are in the best interests of the Debtors and their respective creditors.

### A.   The Wage Motion

#### 1.   The Debtors' Workforce

15. Presently, the Debtors collectively employ 41 employees, with Industries employing 34 employees and Studios employing 7 employees (collectively, the "Employees"). All of the Debtors' Employees are located in the United States. Industries' Employees are paid weekly on Fridays in arrears for the prior week, and Studios Employees are paid bi-monthly. See, the spreadsheet entitled "Payroll Summary," attached hereto as **Exhibit 1**.

16. The following Employees are insiders of the Debtors: Bernard Brucha and I (the "Insider Employees").

17. By the Wage Motion, the Debtor seeks authority to pay all obligations pertaining to Employees other than the Insider Employees. With respect to the Insider Employees, no payments will be made until the expiration of the notice period with regard to the Notices of Insider Compensation to be served for each of them.

5

18. The Debtor also seeks authority to pay and honor certain prepetition claims for, among other items, wages, salaries, and other compensation including federal and state withholding taxes, payroll taxes, contributions to employee benefit plans, retirement plans, accrued paid time off, and all other employment related benefits, which the Debtor pays or provides in the ordinary course of its business (collectively, "Employee Obligations").

19. In addition, the Debtor requests authority to pay the appropriate third parties the amounts that are deducted and withheld from Employees' paychecks ("Employee Deductions"), and to reimburse Employees for reimbursable expenses incurred by such employees prepetition in the ordinary course of business ("Employee Expenses").

20. By the Wage Motion, the Debtor also seeks the general authority, in its discretion, to pay or honor the Employee Obligations, including the Employee Deductions and Employee Expenses with respect to all of its Employees, inclusive of the Insider Employees.

21. Additionally, the Debtor seeks authority for and direction to applicable banks and other financial institutions with whom the Debtor does business, in accordance with the Debtor's instructions as may be provided by the Debtor, to receive, process, honor, and pay all checks presented for payment and to honor all electronic payment requests made by the Debtor which are or relate to the Employee Obligations.

**2.     Prepetition Wages**

22. As discussed above, Studios employs 7 domestic employees (some salaried and some hourly). The Debtor pays its employees bi-monthly (on the fifth and the twentieth of the month), in arrears. Typically, a few days prior to each payroll date, funds are transferred to Paychex, the Debtor's payroll processor, to cover the payroll for the applicable periods.

23. Also, in the ordinary course of its business, the Debtor deducts from its employees' paychecks (as applicable): (a) payroll taxes and the employees' portion of FICA and unemployment taxes, (b) employee contributions for health and disability related benefits, (c) employee contributions to 401(k) plans, and (e) other miscellaneous items (collectively, "Employee Deductions"). Paychex pulls the amount equal to the Employee Deductions from the Debtor's operating account to appropriate third-party recipients.

24. Under ordinary conditions, the Debtor's next payroll for employees is scheduled for Friday, May 3, 2024, and relates to the payroll period of April 16, 2024 through April 30. This payroll includes amounts for the prepetition period of April 16, 2024 through and including April 24, 2024 (the "Prepetition Period").

25. The payroll amount associated with the Prepetition Period is expected to be in the aggregate amount of $17,331.83 excluding payroll tax (the "Prepetition Wages"). Attached hereto as **Exhibit 1** is a true and correct spreadsheet reflecting payroll for the Prepetition Period.

26. As of the Petition Date, no Employee has a claim of more than $15,150 in Prepetition Wages on an individual basis.

27. The Debtor seeks authority to continue with its payroll schedule in the ordinary course of its business and consequently to pay all Prepetition Wages as planned on the dates indicated above. In all instances, due to the fact that no single Employee has a claim of more than $15,150 in Prepetition Wages, the Debtor will not make payroll distributions to any particular Employee in an amount that would exceed the allowable priority portion of such Employee's Prepetition Wages under section 507(a)(4) of the Bankruptcy Code.

28. In addition to the payment of Prepetition Wages, the Debtor is also seeking to be authorized, but not required, to pay all payroll taxes related to the Prepetition Wages, which the Debtor estimates to be approximately $1,091.51.

### 3. Employee Benefits

29. The Debtor has established a variety of benefit plans and programs ("Employee Benefits") designed to assist its Employees and the Employees' eligible dependents in meeting certain financial burdens, including those that arise from illness, disability, and death. The Employees receive Employee Benefits pursuant to the terms and policies established by the Debtor. The Debtor seeks authorization, but not direction, to pay or otherwise honor these Employee Benefits, which are described below.

30. *Medical, Dental, Vision Insurance, Long-Term Disability, Basic Term Life Insurance*. The Debtor offers all full-time Employees basic medical, dental, and vision insurance, as well as long-term disability and basic term life insurance. The Debtor's medical insurance is provided by

United Healthcare and Kaiser. All other insurance is provided by Guardian. A portion of the cost for each Employee's insurance is deducted from his or her regular paycheck, and the Debtor contributes a portion as well. To maintain employee morale and not unfairly impose hardships on its workforce, the Debtor seeks authority to pay any outstanding unpaid premiums, deductibles, and/or claims with respect to medical, dental, and vision insurance accrued prepetition, and to continue to honor its prepetition policies relating to such insurance. The Debtor believes it is current under these obligations and that there are no arrears with respect to Employees' insurance.

31.    *Worker's Compensation Premiums*. Additionally, the Debtor is obligated to pay worker's compensation insurance premiums for its Employees. Industries owes its current down payment on its workers' compensation premium of $16,000 and Studios owes $5,700 in annual worker's compensation premiums. Both of these payments must be made by April 30, 2024. The Debtor seeks authority to pay this obligation in the ordinary course of its business as part of its Employee Obligations.

32.    *Retirement Benefits Plan*. The Debtor offers eligible Employees the opportunity to participate in a 401(k) Savings and Retirement Plan ("401(k) Plan"). If an Employee contributes the full allowable contribution, the Debtor matches the Employee's contribution up to 3%. The balance of the Employees' contributions are paid by the Employees. In addition to the amount paid by the Debtor, the Debtor, through Paychex, forwards amounts equal to the Employee's chosen contributions from its operating accounts to appropriate third-party recipients on behalf of its Employees, and thus seeks authority to continue the 401(k) Plan and forward any prepetition amounts as necessary.

**4.    Reimbursable Expenses**

33.    Employees may submit certain business-related expenses to the Debtor for reimbursement. These expenses include, among other things, car rental, meals, business supplies, and other business-related costs, including those charged by Employees onto corporate credit cards. As of the Petition Date, the Debtor believes that it has $350 in reimbursable expenses. In the event that the Debtor owes any other *de minimis* amount of reimbursements to any non-insider employee,

the Debtor seeks authority, but not direction, to pay these Employee Expenses and to continue to reimburse all postpetition Employee Expenses in the ordinary course of business.

### 5. Paid Time Off

34. By Wage Motion, the Debtor is also seeking authority, but not direction, to permit Employees to use earned, accrued prepetition vacation time, personal time, sick, bereavement and other leave in the ordinary course (the "Paid Time Off"). The Debtor anticipates that the Paid Time Off will continue to accrue post-petition, and requests authority to allow it to be used without restrictions other than those imposed by the Debtor's normal human resources policies. See **Exhibit 2** hereto.

### B. Cash Collateral Motion

35. The Debtor estimates that its assets currently have a value of approximately $7 million. The Debtor's cash, accounts receivable and inventory total $2.5 million as of the petition date, and the Debtor's other assets (including existing contracts, deposits, furnishings, goodwill, fixtures and equipment) have a value of approximately $4.5 million. Additionally, the Lender has a personal guaranty against the Debtor's owner Bernard Brucha.

36. As set forth above, the Debtor commenced this case based on the pending notice to vacate the Buena Park Property, which would cause Industries to immediately stop all of its business operations, which would have a waterfall effect on the Debtor as part of the businesses overlap. As illustrated by the budget ("Budget") attached hereto as **Exhibit 3,** the Debtor will be able to operate cash flow positive post-petition. The Budget sets forth the minimum requirements of the Debtor to operate its business to accomplish a successful reorganization for all creditors. The Budget does not contemplate any "extraordinary" or "luxury" expense.

37. The Debtor will not pay any insider salaries (which are highlighted on the Budget) until the time period has passed with respect to the Insider Comp Notices served in accordance with the local rules.

38. Although the Budget represents the Debtor's best estimate of the necessary expenses associated with the business, as the ebbs and flows of the Debtor's business are unpredictable, the needs of the business may fluctuate. Therefore, the Debtor requests Court authority to deviate from

the total expenses contained in the Budget by no more than 15%, on a cumulative basis, and to deviate by category (provided the Debtor does not pay any expenses outside of any approved categories) without the need for further Court order.

39. In order for the Debtor to operate its business in accordance with the Budget and to fund the upcoming May 3, 2024[2] payroll, the Debtor must be able to use the revenues that are paid to it. Furthermore, the Debtor's workers' compensation premium is due no later than April 30, 2024.

### C. Cash Management Motion.

40. The Debtor seeks authorization to maintain its existing pre-petition account at Chase, Acct No. XXXXX3675 (the "Pre-BK Account") for all purposes in this case to avoid immediate and irreparable harm and to continue to collect incoming payments to avoid disruption in the Debtor's collections during the chapter 11 case.

41. As part of the cash management system, the Debtor proposes to maintain the Pre-BK Account, which is the account utilized for Debtor's deposits and disbursements. The Debtor requests authority to continue to use the Pre-BK Account as it did pre-petition to ensure that (a) payroll can timely be funded, and (b) to ensure a smooth transition to the extent that this account is currently set up for automatic payments, etc.

42. All the Debtor's customers pay the Debtor via ACH payments deposited into the Pre-BK Account. Establishing new accounts would entail significant delay and cost and would require the Debtor to inform each of its customers of the new account (and thus the bankruptcy filing). At a minimum, substantial disruptions to the Debtor's business would occur by, among other things, delaying the receipt of incoming payments and funding payroll. This would in turn harm creditors, employees, and consumer confidence, and would hinder the Debtor's chance to complete a successful reorganization. Accordingly, the maintenance of the Pre-BK Account is essential for the Debtor's continued operations.

---

[2] The Debtor must fund its payroll by 2:00 p.m. Wednesday, May 1, 2024 in order for its employees to be paid by Friday, May 3, 2024.

2980732

43. To obviate the disruption that might otherwise occur in the collection process, it is in the best interest of the estate that the Debtor be authorized to continue its ordinary course use of the Pre-BK Account, rather than to close the account and then open a new account.

44. It is imperative that the Debtor's cash management system be approved to provide a smooth transition into chapter 11 without disrupting the Debtor's ongoing business operations. During this transition period, the Debtor needs to ensure that its employee paychecks can be issued and cashed in a timely manner, that customers may purchase the Debtor's goods and services and pay outstanding invoices, and that business continues as usual. Additionally, the continued use of the Pre-BK Account enables the Debtor to maintain control over the receipt of cash, and to generate timely and accurate financial information critical to operations during the pendency of the chapter 11 case. If these practices and procedures are disrupted, the Debtor's efforts to reorganize may be jeopardized.

45. Further, maintaining the existing Pre-BK Account would not prejudice any party. The Debtor will maintain strict records with respect to all transfers of cash so that it is able to readily account for all transactions. The Debtor's maintenance of its existing Pre-BK Account is not only of critical importance to the Debtor's business operations, but is also in the best interest of the Debtor, its estate, and creditors. The Debtor will attempt to have the Pre-BK Account converted to a debtor-in-possession bank account but in case Chase is not willing to accommodate that request, the Debtor must maintain its existing Pre-BK Account.

46. If the Pre-BK Account is disrupted, the Debtor will experience immediate and irreparable harm.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 25th day of April, 2024, at Buena Park, California.

*Lisa Boardman*

---------------------------------
Lisa Boardman

| Company name | Employee ID | Department | Supports | Type | State | Payroll April 16-24, 2024 | Overtime Amounts | Overtime Hours | Unreimbursed Expenses | Total ER Reimbursed Tech | Total Earnings | ER Payroll Tax | Total | Total Insider |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mash Studios Inc | 116 | Production Design | Studios | Salaried | CA | 1,706.67 | | | 0 | 50.00 | 1,756.67 | 119.47 | 1,876.14 | |
| Mash Studios Inc | A01L | Account Management | Studios | Salaried | CA | 2,000.13 | | | 0 | 50.00 | 2,050.13 | 140.01 | 2,190.14 | |
| Mash Studios Inc | A01J | Concept Design | Studios | Salaried | CA | 2,346.67 | | | 0 | 50.00 | 2,396.67 | 164.27 | 2,560.94 | |
| Mash Studios Inc | A010 | Principal | Studios \| Industries | Salaried | CA | 3,747.05 | | | 0 | - | 3,747.05 | 262.29 | 4,009.35 | 4,009.35 |
| Mash Studios Inc | 42 | Finance | Studios \| Industries | Salaried | CA | 1,774.93 | | | 0 | 50.00 | 1,824.93 | 124.25 | 1,949.18 | |
| Mash Studios Inc | 39 | LAXseries | Studios | Contract | CA | 896.00 | | | 0 | 50.00 | 946.00 | - | 946.00 | |
| Mash Studios Inc | A00Z | Production Design | Studios | Salaried | CA | 2,773.33 | | | 0 | 50.00 | 2,823.33 | 194.13 | 3,017.46 | |
| Mash Studios Inc | 38 | Finance | Studios \| Industries | Hourly | CA | 1,244.16 | 492.89 | 12.17 | 0 | 50.00 | 1,787.05 | 87.09 | 1,874.14 | |
| | | | | | | **16,488.94** | **492.89** | **12.17** | **0.00** | **350.00** | **17,331.83** | **1,091.51** | **18,423.34** | **4,009.35** |
| | | | | | | | | | | | 17,331.83 | | 18,423.34 | |
| | | | | | | | | | | | <> | | <> | |

**401K Employer Contribution**                                                                                                          380.86

**Exhibit 1_001**

| Employee Number | Time Off Type | Accrued Hours | Accrued Hours Liability | Adj Hours | Used Hours | Hours Balance |
|---|---|---|---|---|---|---|
| 116 | Sick | 48.00 | $1,476.87 | 0.00 | 8.00 | 40.00 |
| 116 | Vacation | 18.67 | $574.34 | 11.32 | 16.00 | 13.99 |
| A01L | Sick | 48.00 | $1,730.81 | 0.00 | 0.00 | 48.00 |
| A01L | Vacation | 37.33 | $1,346.19 | 208.00 | 13.50 | 231.83 |
| A01J | Sick | 48.00 | $2,030.69 | 0.00 | 4.00 | 44.00 |
| A01J | Vacation | 28.00 | $1,184.57 | 23.09 | 8.00 | 43.09 |
| 42 | Sick | 48.00 | $1,535.94 | 0.00 | 0.00 | 48.00 |
| 42 | Vacation | 18.67 | $597.31 | 18.64 | 0.00 | 37.31 |
| 39 | Sick | 0.00 | $0.00 | 0.00 | 0.00 | 0.00 |
| 39 | Vacation | 0.00 | $0.00 | 0.00 | 0.00 | 0.00 |
| A00Z | Sick | 48.00 | $2,399.91 | 0.00 | 0.00 | 48.00 |
| A00Z | Vacation | 37.33 | $1,866.59 | 74.60 | 12.00 | 99.93 |
| 38 | Sick | 48.00 | $1,296.00 | 0.00 | 0.00 | 48.00 |
| 38 | Vacation | 18.67 | $504.00 | 21.33 | 0.00 | 40.00 |

**Exhibit 2_001**

| MASHstudios Cash Flow | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | 4/29/2024 | 5/6/2024 | 5/13/2024 | 5/20/2024 | 5/27/2024 | 6/3/2024 | 6/10/2024 | 6/17/2024 | 6/24/2024 |
| Cash Balance, Beginning | 71,162 | 51,840 | 52,438 | 37,882 | 83,624 | 107,521 | 93,745 | 139,767 | 152,875 |
| Receipts | | | | | | | | | |
| Customer Payments | 60,243 | 19,420 | 54,397 | 111,312 | 75,078 | 51,087 | 115,110 | 107,627 | 124,262 |
| Total Receipts | 60,243 | 19,420 | 54,397 | 111,312 | 75,078 | 51,087 | 115,110 | 107,627 | 124,262 |
| Total Cash Available | 131,405 | 71,260 | 106,835 | 149,194 | 158,702 | 158,608 | 208,855 | 247,394 | 277,137 |
| Non Insider Payroll and ER Taxes | 22,463 | | 22,643 | | | 22,643 | | 22,643 | |
| Insider Payroll and ER Taxes | 6,265 | | 6,265 | | | 6,265 | | 6,265 | |
| ER 401K | 381 | | 381 | | | 381 | | 381 | |
| Payroll Fees | 452 | | 452 | | | 452 | | 452 | |
| Sales Tax \| Payment Plan \| MASHstudios | | 5,318 | | | | 5,318 | | | |
| Sales Tax \| Q1 2024 \| LAXseries | 1,544 | | | | | | | | |
| Workers Compensation \| renewal \| annual premium | 5,693 | | | | | | | | |
| SBA Loan | 9,842 | | | | 9,842 | | | | |
| O/H Health Benefits | | | 7,125 | | | | 7,125 | | |
| O/H Corporate & General Liability Insurance | | | 2,507 | | | | 2,507 | | |
| O/H IT Services/Servers/Security/Data | | | | 3,051 | | | | 3,051 | |
| O/H Software/Licenses/NetSuite/Other | | | | 5,000 | | | | 5,000 | |
| O/H Google Ad Spend \| LAXseries | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 |
| O/H Computers/Dell | 952 | | | | 952 | | | | |
| O/H Bill.com | | | | | 998 | | | | |
| O/H Cellular Phones | 350 | | 350 | | 350 | | | 350 | |
| O/H Licenses and Fees | | 350 | | | | 350 | | | |
| O/H Office Supply/Expense/Postage | 150 | | 150 | | | 150 | | 150 | |
| O/H Equipment Rental/Copier | | | 238 | | | | | 238 | |
| O/H Priority One/Shipping | | 2,500 | | | | 2,500 | | | |
| O/H Shopify Fees | | | 350 | | | | | 350 | |
| D/E Design Supplies | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 |
| D/E Vendor Payments \| on project % complete \| 51% | 30,724 | 9,904 | 27,742 | 56,769 | 38,290 | 26,054 | 58,706 | 54,890 | 63,374 |
| Total Disbursement | 79,565 | 18,822 | 68,953 | 65,570 | 51,182 | 64,862 | 69,088 | 94,519 | 64,124 |
| Cash Balance, ending | 51,840 | 52,438 | 37,882 | 83,624 | 107,521 | 93,745 | 139,767 | 152,875 | 213,014 |
| | 51,840 | 52,438 | 37,882 | 83,624 | 107,521 | 93,745 | 139,767 | 152,875 | 213,014 |

**Exhibit 3_001**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**21650 Oxnard Street, Suite 500, Woodland Hills, CA 91367**.

A true and correct copy of the foregoing document entitled**: OMNIBUS DECLARATION OF LISA BOARDMAN IN SUPPORT OF FIRST DAY MOTIONS** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document.  On **April 25, 2024,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Michael J Hauser**    michael.hauser@usdoj.gov
- **Susan K Seflin**    sseflin@bg.law
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov
- **Jessica Wellington** jwellington@bg.law, ecf@bg.law

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**\*\*JUDGE'S COPY NOT REQUIRED IF LESS THAN 25 PAGES (GENERAL ORDER 23-01).**

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **April 25, 2024,** I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**Served via email before 12:00 pm on the attached spreadsheet.**

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 25, 2024 | Jessica Studley | /s/ Jessica Studley |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*    **F 9013-3.1.PROOF.SERVICE**

| Debtor Name | Creditor Name | Email Address |
| --- | --- | --- |
| MASHindustries, Inc. | BSP VBP PROPCO LLC | jill.brown@cushwake.com |
| MASHindustries, Inc. | Next Level Installations LLC | marlene@americancabinetworks.com |
| MASHindustries, Inc. | GL Veneer Company, Inc. | roseg@glveneer.com |
| MASHindustries, Inc. | RRS Finishers Group, LLC | accounting@mashstudios.com |
| MASHindustries, Inc. | Tile Expo Inc | dh@tileexpoinc.com |
| MASHindustries, Inc. | Royal Plywood Company, Llc | invoicing@royalplywood.com |
| MASHindustries, Inc. | West Coast Laminating, Inc. | rtritz@ebbradley.com |
| MASHindustries, Inc. | National Marble & Architectural Stone, Inc | gpmarich@roadrunner.com |
| MASHindustries, Inc. | Forest Plywood - MI | kmendez@forestplywood.com |
| MASHindustries, Inc. | Frank Recruitment Group | accountsna@frankgroup.com |
| MASHindustries, Inc. | Ortiz Custom Upholstery, Inc | adilene@ortizupholstery.com |
| MASHindustries, Inc. | California Timberline Inc | greg@caltimberline.com |
| MASHindustries, Inc. | CPS/Garten Corporation | jenifer@cpsgarten.com |
| MASHindustries, Inc. | IDS Interior Detail Solution | kurtc@idsolut.com |
| MASH STUDIOS, Inc. | MASHVENTURES | mblemel@mashventures.net |
| MASH STUDIOS, Inc. | Great Openings | kasiala@metalworks1.com |
| MASH STUDIOS, Inc. | Fabcon, Inc. | accounting@fabcon.com |
| MASH STUDIOS, Inc. | Baresque USA LLC | cs@baresque.us |
| MASH STUDIOS, Inc. | Suddath Relocation Systems of Oregon LLC | jeannie.friedl@suddath.com |
| MASH STUDIOS, Inc. | Concentric Spaces | chris@concentricspaces.com |
| MASH STUDIOS, Inc. | Concentric Spaces | jrizzardi@cairncross.com |
| MASH STUDIOS, Inc. | GLC Millworks | julie@glcmillworks.com |
| MASH STUDIOS, Inc. | Forest Plywood Co. | mbarrass@forestplywood.com |
| MASH STUDIOS, Inc. | Big Red Machine Shop | steve@bigredmachineshop.com |
| MASH STUDIOS, Inc. | Nace Sheet Metal Corp | lily@nacesheetmetal.com |
| MASH STUDIOS, Inc. | ORACLE Netsuite | collectionsteam_us@oracle.com |
| MASH STUDIOS, Inc. | MI Concepts LLC | michelle@mi-concepts.com |
| MASH STUDIOS, Inc. | Contract Installations, Inc. | stevemajcherek@aol.com |
| MASH STUDIOS, Inc. | Wing Partners LLC | michael@wingpartners.com |
| MASH STUDIOS, Inc. | OT Logistics Freight Transportation | invoicing@ot-logisticsllc.com |
| MASH STUDIOS, Inc. | Oncore Pro | mschmitz@systechs.com |
| Both | BSP VBP PROPCO, LLC | ROdson@soollp.com |
| Both | Counsel for SBA | elan.levey@usdoj.gov |
| Both | US Trustee's Office | michael.hauser@usdoj.gov |